PUBLICATIONS INTERNATIONAL, LIMITED, Plaintiff/Counterdefendant–Appellant,

v.

MEREDITH CORPORATION, Defendant/Counterplaintiff–Appellee.

Nos. 95–3485, 95–3530.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1996.

Decided July 8, 1996.

Wayne B. Giampietro (argued), Gregory N. Freerksen, and Sharon M. Goss, Witwer, Burlage, Poltrock & Giampietro, Chicago, IL, for plaintiff–appellant.

Alan S. Cooper, Banner, Birch, McKie & Beckett, Washington, DC, Marc S. Cooperman, Jon O. Nelson, and Laura J. DeMoor, Banner & Alegretti, Chicago, IL, for defendant–appellee.

Before BAUER, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

■ This appeal serves up an issue of first impression in this Circuit: whether the copyright laws of the United States afford protection to the constituent recipes contained in a cookbook that enjoys a registered compilation copyright. The district court entered a preliminary injunction after concluding that recipes, which in this case prescribe an assortment of edible derivatives of Dannon yogurt, are protectable under copyright law. Because we find that the recipes involved in this case are not protectable under copyright law, we vacate the entry of the preliminary injunction.

I

This appeal lies under 28 U.S.C. § 1292(a)(1) from the district court's entry of a preliminary injunction on Meredith Corporation's counterclaim against Publications International, Limited, ("PIL") for copyright infringement. Thus, although there are several causes of action involved in this dispute, we will focus only upon those facts relevant to the alleged infringement and the entry of the injunction. For the purpose of deciding this appeal, we take the underlying facts as found by the district court in its order entering the preliminary injunction.

A

Both parties publish magazines and books containing cooking recipes, and these publications are often featured for sale on racks adjacent to checkout stations at supermarkets and grocery stores. Central to this appeal is Meredith's DISCOVER DANNON—50 FABULOUS RECIPES WITH YOGURT (1988). On September 13, 1988, Meredith obtained a copyright in DISCOVER DANNON (registration number TX 2–400–591). In section 2 of this copyright registration certificate, Meredith claims protection for a "[c]ollective work," and in section 6 further describes the subject matter as a "[c]ompilation" of "[r]ecipes tested with Dannon yogurt."

This publication announces that "creamy Dannon yogurt" owes its popularity not only to its flavor, but to its versatility as well. To back up this claim, DISCOVER DANNON offers a cornucopia of culinary delights featuring— you guessed it—Dannon yogurt. From "Simple Snacks" to "Dazzling Desserts," "Super Salads" to "Exciting Entrees," the array of offerings is enough to send anyone rushing to the fridge. Some highlights are "Chunky Chili Dip," "Crunchy Tuna Waldorf Salad," "Spicy Bean Tostadas," and for dessert, "Chocolate Fruit Torte." As inspiration, Meredith offers pictorial representations of the final products upon which the yogurt devotee may longingly fixate.

In its motion for the injunction, Meredith alleged that PIL had since 1992 produced twelve publications containing recipes poached from DISCOVER DANNON. Of these twelve publications, two contain by far the highest number of allegedly infringing recipes (twenty-two each, as compared to nine for the third-highest total): DANNON HEALTHY HABIT COOKBOOK—GREAT-TASTING RECIPES LOWER IN FAT AND CALORIES (1993), and TASTE WHY IT'S DANNON—COLLECTION OF GREAT-TASTING RECIPES (1995).[1] These cookbooks echo Meredith's celebration of Dannon yogurt as a nutritional bonanza for anyone

---

1. PIL claims that TASTE WHY IT'S DANNON was merely a reissuance of the DANNON HEALTHY HABIT compilation. We have sifted through the two publications and find them to be nearly identical. PIL made slight revisions in the latter offering, the most notable of which was the transposition of "Shrimp and Snow Pea Salad" and "Crunchy Tuna Waldorf Salad" as the headline recipe in the "Fit 'n' Fresh Salads" chapter.

immersed in today's health-conscious culture. And like DISCOVER DANNON, both PIL cookbooks prominently display the Dannon trademark on the cover. We will not further tempt the reader with a sampling of PIL's arsenal of yogurt-based concoctions.

There is not really any dispute that the salient PIL recipes are functionally identical to their counterparts in DISCOVER DANNON. The recipes have the same titles but display certain differences in the listing of ingredients, directions for preparation, and nutritional information. However, it doesn't take Julia Child or Jeff Smith to figure out that the PIL recipes will produce substantially the same final products as many of those described in DISCOVER DANNON.

PIL filed a three-count complaint in the Northern District of Illinois on February 22, 1994, alleging that Meredith Corporation had engaged in unfair and deceptive trade practices in violation of the Lanham Act, 15 U.S.C. § 1125, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Act, 815 ILCS 510/2. PIL alleged that Meredith had styled its publications deliberately to resemble PIL's publications, thereby misleading and confusing consumers. PIL also alleged that Meredith had induced retailers to place Meredith's publications in the wire racks at supermarkets that were contractually reserved for PIL publications. PIL asserted that it had suffered revenue losses as a result of Meredith's actions, and it specified damages of $200,000.

On March 1, 1995, Meredith filed a three-count counterclaim against PIL. The first count alleged infringement of Meredith's copyright in DISCOVER DANNON under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* Counts two and three mirrored PIL's complaint against Meredith by alleging violations of the Lanham Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. On August 17, Meredith filed a motion for a preliminary injunction against any further copyright infringement by PIL.

PIL filed a response to this motion on August 24. In this response, PIL incorporated by reference the arguments it had presented in its memorandum in support of its motion for summary judgment on Meredith's counterclaim, which it had filed the day before. In the memorandum, PIL argued that the compilation copyright in DISCOVER DANNON did not extend to the individual recipes because recipes are not subject to copyright protection as a matter of law. Meredith filed its reply on August 31, in which it joined the issue of the copyrightability of the recipes, which was a major premise of Meredith's counterclaim.

The district court conducted a hearing on Meredith's motion for the preliminary injunction on October 4 at which counsel for PIL failed to appear. The district court thereafter issued the preliminary injunction on October 6. The injunction prohibited PIL from

publishing, distributing or selling any books or magazines that contain one or more of the following twenty six (26) recipes: Blueberry–Lemon Muffins, Crunchy Tuna Waldorf Salad, Gingered Fruit Salad, SunflowerHerb Dressing, Fresh Basil and Pepper Potato Salad, Curried Turkey and Peanut Salad, Orange Poppy Seed Dressing, Spicy Bean Tostadas, Chunky Chili Dip, Creamy Tarragon Dip, Savory Dijon Chicken Spread, Swiss 'n' Cheddar Cheeseball, Italian Ham Lasagna, Mustard Pork Chops, Broccoli–Tuna Pasta Toss, Strawberry Brulee, Yogurt Drop Cookies, Fruit Trifle, Lemony Carrot Cake, Lemon Yogurt Frosting, Easy Fruit Shortcake, Orange–Filled Cream Puffs, Chocolate Fruit Torte, Creamy Citrus Cheesecake, Nutty Cheese and Apple Salad, Creamy Vegetable Potpourri.

In addition, the injunction ordered PIL to recall unsold copies of its publications containing any of the identified recipes. PIL subsequently filed a motion to vacate the injunction on October 11, which the district court denied, and PIL filed a notice of appeal on October 13.

### B

Before getting to the merits, we address a procedural oddity that causes us some concern. The district court issued the preliminary injunction based upon findings of fact and law contained in its order dated October

6. This order was preceded by Meredith's original motion for the injunction, PIL's response, and Meredith's reply, all of which were on file with the district court by August 31. On September 27 (ten days prior to the October 4 hearing), Meredith tendered what it termed "supplemental evidence" to the district court, which purported to "prove beyond any doubt that PIL *knew* that the recipes it obtained from Dannon, and which it copied for use in its infringing publications, came straight from Meredith's publication, Discover Dannon."

This supplemental evidence consisted of a letter, written on Dannon letterhead, from Eileen O'Gorman to Ivy Lester of PIL. The letter references an enclosed list of 102 recipes that includes each recipe's "title and origin." Meredith claimed in its submission that the attached list of recipes demonstrated that the sources of origin for many of the recipes were Meredith publications, namely DISCOVER DANNON and THE BETTER HOMES AND GARDENS COOKBOOK. Indeed, the list does identify 13 recipes as originating in DISCOVER DANNON and 12 as originating in THE BETTER HOMES AND GARDENS COOKBOOK.

In its order issuing the injunction, the district court made the following findings:

> The next element Meredith would have to show to prevail on the merits would be that PIL copied Meredith's copyrighted work. There is adequate and indeed persuasive evidence that this is precisely what PIL did. PIL received recipes from The Dannon Company. As indicated by the [sic] Meredith's latest submission to the Court, Dannon's submission to PIL made clear to PIL that many of the recipes were indeed derived from Discover Dannon.

It seems clear that the district court based this finding in substantial part upon Meredith's September 27 submission.

So must it also have seemed to PIL. In two motions filed on October 11 (one week after the hearing at which PIL was not represented), PIL moved the district court to vacate the preliminary injunction and to strike Meredith's September 27 submission. In its motion to vacate the injunction, PIL wrote:

> It is inappropriate for the Court to rely upon Meredith's submission of alleged additional evidence of PIL's copying because there is insufficient proof that PIL ever received the document which Meredith claims shows PIL's knowledge of the source of certain recipes. As is set forth in the Motion to Strike that document, which is being filed contemporaneously with this motion, PIL never received that document and nothing contained therein may be imputed to PIL.

The motion to strike echoed this point, arguing that the document was not authenticated and that it contained no evidence that PIL had ever received it. In support of the motion to strike, PIL submitted the affidavits of two PIL employees, including the addressee of the letter, in which they deny ever seeing the document.

On October 13, the district court granted PIL's motion to strike Meredith's September 27 submission but denied PIL's motion to vacate the preliminary injunction. The court issued both directives without any significant explanation. It is unclear how the injunction could properly remain in force after the district court had decided to strike from the record evidence that it had explicitly relied upon in issuing the injunction. Some manner of exposition by the district court would have been appropriate, and this series of events by itself calls into question the propriety of the injunction remaining in effect after October 13.[2] However, PIL did not assign any error on this point, and so we put aside our con-

---

**2.** We note that in the same order of October 13, the district court stayed the injunction only with respect to the PIL publications already in circulation pending appeal. PIL did file its notice of appeal on October 13. It is therefore possible that the district court abstained from reviewing its entry of the injunction in anticipation that a panel of this court would soon review the entire record leading to the entry of the injunctions.

We need not speculate any further on this point. However, we are constrained to point out that had the district court, upon a fresh look at Meredith's evidence and arguments absent the stricken material, determined that an injunction was inappropriate (as we conclude below), appellate review would have been unnecessary thereby conserving significant resources.

cerns and move on to the merits of this appeal.

## II

### A

In order to obtain a preliminary injunction in a claim for copyright infringement, the moving party must demonstrate (1) some likelihood that it will prevail on the merits of its claim, (2) absence of an adequate remedy at law, and (3) that it will suffer irreparable harm absent injunctive relief. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir.1994); *Atari, Inc. v. North American Philips Consumer Elec. Corp.*, 672 F.2d 607, 613 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Should the movant satisfy these requirements, the district court must then weigh the portended irreparable harm to the movant against the potential injury to the enjoined party and must consider the effect of the injunction upon nonparties. *Erickson*, 13 F.3d at 1067; *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir.1992). A determination whether to issue a preliminary injunction is, by its very nature, an exercise in weighing competing equities and interests. *See Roland Machinery Co. v. Dresser Indus.*, 749 F.2d 380 (7th Cir.1984).

Just as there is no formulaic standard for deciding whether to issue an injunction, there is not a rigid calculus guiding appellate review. "Normally, our review of the district court's determination is tailored to the various functions that the district court performs in evaluating whether to grant or deny a preliminary injunction." *In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir.1993). We will accept the district court's findings of fact unless clearly erroneous, *id.*, and will give substantial deference to the district court's "discretionary acts of weighing evidence or balancing equitable factors." *United States v. Baxter Healthcare Corp.*, 901 F.2d 1401, 1407 (7th Cir.1990). However, we reserve plenary review for the district court's conclusions of law. *Id.*

The dispositive issue in this appeal is whether Meredith has shown some probability of success on the merits of its copyright claim. *See Roland Mach.*, 749 F.2d at 384, 387. In concluding that Meredith had demonstrated a likelihood of prevailing on that claim, the district court found that the recipes were protectable subject matter under the federal copyright laws. This represented an interpretation of statutory law, and we will accordingly review this determination *de novo. Erickson*, 13 F.3d at 1067. We are constrained by the limited scope of appellate jurisdiction under 28 U.S.C. § 1292(a)(1) in the context of reviewing a grant of a preliminary injunction, *see Alabama v. United States*, 279 U.S. 229, 231, 49 S.Ct. 266, 266–67, 73 L.Ed. 675 (1929), and so we reach only so far as necessary to decide this appeal. As it turns out, though, "only so far" is far enough to sound the death knell for Meredith's copyright infringement claim.

### B

The Constitution of the United States is the source of congressional power to enact copyright protection laws:

> The Congress shall have Power ... To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

U.S. CONST. art. I, § 8, cl. 8. This clause has two components. First—and most obvious—is its enumeration of a lawmaking power. It vests in Congress the power to make laws necessary and proper for promoting the evolution of science and the arts. See U.S. CONST. art. I, § 8, cl. 18. The objective of this grant of power was to establish a nationally uniform system for the protections previously recognized at common law. See THE FEDERALIST No. 43, at 338 (James Madison) (John C. Hamilton ed. 1904). Acting pursuant to this authority, Congress passed the Copyright Act of 1976, Pub.L. No. 94–553, 90 Stat. 2541 (codified as amended at 17 U.S.C. § 101 *et seq.*), which defines the scope and substance of federal copyright protection.[3]

---

**3.** The 1976 Act succeeded other federal copyright

legislation dating to 1790. *See Goldstein v. Cali-*

The second component of this clause is prescriptive and describes the means by which Congress may achieve the stated objective. *See Goldstein v. California,* 412 U.S. 546, 555, 93 S.Ct. 2303, 2309, 37 L.Ed.2d 163 (1973). It states that any exclusive rights created by Congress shall accrue only to "Authors and Inventors" with respect to their "Writings and Discoveries." This constitutional requirement expresses itself in the modern axiom that "[t]he *sine qua non* of copyright is originality." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991); *see also Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884); *The Trade–Mark Cases,* 100 U.S. (10 Otto) 82, 25 L.Ed. 550 (1879).

■ Subsumed within the concept of originality is the requirement that copyrightable works possess some minimum indicia of creativity, that they be "original intellectual conceptions of the author." *Burrow–Giles,* 111 U.S. at 58, 4 S.Ct. at 281. Because no person can claim original conception of facts, they are excluded from copyright protection. *Harper & Row Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 556, 105 S.Ct. 2218, 2228, 85 L.Ed.2d 588 (1985).

According to the Copyright Act of 1976, the subject matter of copyright is an original work of authorship that is fixed in a tangible medium of expression. 17 U.S.C. § 102(a). Such works of authorship may fall into one of several categories identified in § 102(a), which include literary works. Section 102(b) excludes certain subject matter from copyright protection:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). As explained by the Supreme Court in *Harper & Row,* this section is commonly viewed as the statutory basis for the fact/expression or idea/expression dichotomy, 471 U.S. at 547, 556, 105 S.Ct. at 2223, 2228, which delineates the boundary between copyright and patent. It is this section of the Copyright Act that we look to in answering the question presented in this appeal.

### III

### A

To establish its claim of copyright infringement by PIL, Meredith must prove ownership of a valid copyright and PIL's copying of "constituent elements of the work that are original." *Feist,* 499 U.S. at 361, 111 S.Ct. at 1296; *see also Atari, Inc.,* 672 F.2d at 614. Meredith claims that PIL infringed its copyright by reproducing in its own publications many of the recipes that Meredith had published in DISCOVER DANNON. As noted above, PIL's recipes are not verbatim copies of Meredith's recipes but do appear designed to achieve the same results.

There is some disagreement over the nature of Meredith's copyright in DISCOVER DANNON. PIL claims that Meredith has only a "compilation" copyright in DISCOVER DANNON. Meredith argues that it has a compilation copyright in DISCOVER DANNON *in addition* to copyrights in the individual recipes themselves because it claimed copyright in a "collective work." Meredith described DISCOVER DANNON in section 2a of the certificate of registration as a "collective work," but in section 6b of the same certificate, it entered the following description of the material for which it claimed copyright protection: "Recipes tested with Dannon yogurt. Compilation." Congress has come to the rescue, however, for 17 U.S.C. § 101 states that the term "compilation" includes collective works.

■ The Copyright Act defines a compilation as:

> a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

*fornia,* 412 U.S. 546, 562 n. 17, 93 S.Ct. 2303, 2312 n. 17, 37 L.Ed.2d 163 (1973).

17 U.S.C. § 101. A compilation copyright protects the order and manner of the presentation of the compilation's elements, but does *not necessarily* embrace those elements. *Feist,* 499 U.S. at 348, 111 S.Ct. at 1289. It therefore promotes the progress of science and art by allowing others to build upon ideas or information (i.e., facts) set forth in a compilation. *See Harper & Row,* 471 U.S. at 556–57, 105 S.Ct. at 2228–29. When the elements that compose a compilation are not themselves copyrightable, "[t]he only conceivable expression is the manner in which the compiler has selected and arranged the facts." *Feist,* 499 U.S. at 349, 111 S.Ct. at 1289.

■ The creative energies that an author may independently devote to the arrangement or compilation of facts may warrant copyright protection for that particular compilation. *See Feist,* 499 U.S. at 348, 111 S.Ct. at 1289; *Harper & Row,* 471 U.S. at 547, 105 S.Ct. at 2224 (citing *Schroeder v. William Morrow & Co.,* 566 F.2d 3, 5 (7th Cir.1977)). This also extends to the compilation of preexisting materials that is the work product of others. *See West Publishing Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1223–24 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). There is no dilution of the originality requirement, for a compilation's originality flows from the efforts of "industrious collection" by its author. *Schroeder,* 566 F.2d at 5 (citing *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.,* 281 F. 83, 87–88 (2d Cir.), *cert. denied,* 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922)).

**B**

■ Meredith has failed to demonstrate a better than negligible chance that it will succeed on its copyright infringement claim. *See Roland Mach.,* 749 F.2d at 384, 387. The recipes involved in this case comprise the lists of required ingredients and the directions for combining them to achieve the final products. The recipes contain no expressive elaboration upon either of these functional components, as opposed to recipes that might spice up functional directives by weaving in creative narrative. We do not

express any opinion whether recipes are or are not *per se* amenable to copyright protection, for it would be inappropriate to do so. The prerequisites for copyright protection necessitate case-specific inquiries, and the doctrine is not suited to broadly generalized prescriptive rules.

The identification of ingredients necessary for the preparation of each dish is a statement of facts. There is no expressive element in each listing; in other words, the author who wrote down the ingredients for "Curried Turkey and Peanut Salad" was not giving literary expression to his individual creative labors. Instead, he was writing down an idea, namely, the ingredients necessary to the preparation of a particular dish. "[N]o author may copyright facts or ideas. The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper & Row,* 471 U.S. at 547, 105 S.Ct. at 2223. We do not view the functional listing of ingredients as original within the meaning of the Copyright Act.

■ Nor does Meredith's compilation copyright in Discover Dannon extend to facts contained within that compilation. As the Supreme Court stated in *Feist:*

> Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyrights extend to the facts themselves.

*Feist,* 499 U.S. at 350–51, 111 S.Ct. at 1290. The lists of ingredients lack the requisite element of originality and are without the scope of copyright. The Copyright Office itself has stated that "mere listing[s] of ingredients or contents" are not copyrightable. 37 C.F.R. § 202.1. The next question is whether the directions for combining these ingredients may warrant copyright protection.

The Discover Dannon recipes' directions for preparing the assorted dishes fall squarely within the class of subject matter specifi-

cally excluded from copyright protection by 17 U.S.C. § 102(b). Webster's defines a recipe as:

a set of instructions for making something ... a formula for cooking or preparing something to be eaten or drunk: a list of ingredients and a statement of the procedure to be followed in making an item of food or drink ... a method of procedure for doing or attaining something.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1895 (Merriam–Webster 1986). The recipes at issue here describe a procedure by which the reader may produce many dishes featuring Dannon yogurt. As such, they are excluded from copyright protection as either a "procedure, process, [or] system." 17 U.S.C. § 102(b).

 Meredith fashioned processes for producing appetizers, salads, entrees, and desserts. Although the inventions of "Swiss 'n' Cheddar Cheeseballs" and "Mediterranean Meatball Salad" were at some time original, there can be no monopoly in the copyright sense in the ideas for producing certain foodstuffs. Nor can there be copyright in the method one might use in preparing and combining the necessary ingredients. Protection for ideas or processes is the purview of patent. The order and manner in which Meredith presents the recipes are part and parcel of the copyright in the compilation, but that is as far as it goes. As Professor Nimmer states:

This conclusion [i.e., that recipes are copyrightable] seems doubtful because the content of recipes are clearly dictated by functional considerations, and therefore may be said to lack the required element of originality, even though the combination of ingredients contained in the recipes may be original in a noncopyright sense.

1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 2.18[I], at 2–204.25–.26 (May 1996).

Meredith points to one Supreme Court decision and several decisions of the circuit courts of appeals as support for its assertion that recipes may be subject matter for copyright protection. We have examined these cases and conclude that none either directly rebuts or directly supports the argument that recipes are copyrightable. In addition, nothing in our decision today runs counter to the proposition that certain recipes may be copyrightable. There are cookbooks in which the authors lace their directions for producing dishes with musings about the spiritual nature of cooking or reminiscences they associate with the wafting odors of certain dishes in various stages of preparation. Cooking experts may include in a recipe suggestions for presentation, advice on wines to go with the meal, or hints on place settings and appropriate music. In other cases, recipes may be accompanied by tales of their historical or ethnic origin.

Two of the cases cited by Meredith demonstrate this point. In one case, the alleged infringement involved the copying of approximately 170 recipes, which were accompanied by "much other instructive and valuable matter and information for household and family purposes." *Belford, Clarke & Co. v. Scribner,* 144 U.S. 488, 490, 12 S.Ct. 734, 735, 36 L.Ed. 514 (1892). Nothing in *Belford* directly supports a rule of per se recipe copyrightability; in fact, it illustrates the important difference between barebones recipes like Meredith's and recipes that convey more than simply the directions for producing a certain dish. This difference is also illustrated in *Marcus v. Rowley,* 695 F.2d 1171, 1173 (9th Cir.1983), in which the relevant material consisted of "the supply list, icing recipes, three sheets dealing with color flow and mixing colors, four pages showing how to make and use a decorating bag, and two pages explaining how to make flowers and sugar molds." While *Marcus,* which was decided under the fair use doctrine now codified at 17 U.S.C. § 107, is not supportive of Meredith's position in this case, it does suggest that recipes may in certain forms merit the protection of copyright.

A close reading of the other cases cited by Meredith demonstrates that none of them support a *per se* rule. Two of the cases specifically address the collection of recipes and not copyright protection for individual recipes themselves. *Roth v. Pritikin,* 710 F.2d 934, 936–38 (2d Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983), involved the duplication of an entire

book that contained recipes. *Fargo Mercantile Co. v. Brechet & Richter Co.*, 295 F. 823, 827 (8th Cir.1924), concerned the copying of a label that included an emblem and recipes. The *Fargo* court assessed the recipes' copyrightability as a compilation:

> If printed on a single sheet, or as a booklet, these recipes could undoubtedly be copyrighted, and we see no reason why this protection should be denied, simply because they are printed and used as a label.

*Id.* at 828. Fargo does support Meredith's copyright in the compilation DISCOVER DANNON but not in the individual recipes themselves.

### IV

As we noted above, we limit our holding today to the facts of this case. The recipes contained in DISCOVER DANNON do not contain even a bare modicum of the creative expression—i.e., the originality—that is the "*sine qua non* of copyright." *Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. Meredith's compilation copyright in DISCOVER DANNON therefore may not extend to cover the individual recipes themselves, only the manner and order in which they are presented. Because the record demonstrates that the PIL publications offer these recipes in substantially altered form and in a manner and order different from that found in DISCOVER DANNON, we hold that Meredith has not demonstrated the requisite likelihood of success on the merits. The preliminary injunction entered by the district court is therefore VACATED.