ART LINE, INC., Plaintiff and
Counter–Defendant,

v.

UNIVERSAL DESIGN COLLECTIONS,
INC. d/b/a Universal Statuary, Defen-
dant, Counterclaimant and Third–Party
Plaintiff,

v.

ART LINE HONG KONG, LTD., Heching-
er Company, Inc., and American Stores
Company, Third–Party Defendants.

No. 97 C 1081.

United States District Court,
N.D. Illinois,
Eastern Division.

June 13, 1997.

Michelle C. Burke, Steven F. Pflaum, Janet A. Marvel, Lara Marie Levitan, McDermott, Will & Emery, Chicago, IL, for Art Line, Inc.

George Pellegrin McAndrews, Anthony E. Dowell, Geoffrey Andrew Baker, McAndrews, Held & Malloy, P.C., Chicago, IL, for Universal Design Collections, Inc.

Jacqueline A. Criswell, Durga Maheswari Bharam, Jeffrey Mark Alperin, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Hechinger Co., Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the Motion of Plaintiff Art Line, Inc. For Preliminary Injunction. For the following reasons, the motion is granted.

### I. BACKGROUND [1]

Plaintiff, Art Line, Inc. ("Art Line"), and Defendant, Universal Design Collections, Inc. d/b/a Universal Statuary ("Universal"), are both in the business of producing indoor and outdoor statuary products which represents realistic animals. On August 11–14, 1996, Art Line debuted its entire new line of filled, naturalistic statuary animals ("Animals") at the National Hardware Show held in Chicago, Illinois ("trade show"), which Universal also attended. All of the Animals at issue in this case were displayed at that trade show.

Shortly after the trade show, Universal's President, Paul Brueggemeier ("Brueggemeier"), contacted Art Line's President, Steven Pahos ("Pahos"), and inquired about Art Line's marketing plans with respect to its Animals. Pahos advised Brueggemeier that Art Line was actively marketing all of the Animals which it displayed at the trade show. Brueggemeier did not assert any copyright infringement at that time.

In January 1997, Hechinger Company ("Hechinger"), one of Universal's major accounts, decided to carry Art Line's Animals rather than Universal's statuary animals. Shortly thereafter, Pahos received a letter from Brueggemeier. For the first time, Brueggemeier asserted that Art Line's filled frog, tortoise, squirrel, and rabbit statuary products infringed Universal's copyrights.

Despite Art Line's assurances of independent creation, Universal sent letters to Art Line's customers claiming that their sale of "certain filled product(s)" may violate Universal's copyrights, and that their continued sale of those products may subject them to an infringement suit. Art Line is aware of Universal sending such letters to Ames Department Store ("Ames") and American Stores Company ("American Stores"), as well

as Hechinger. Although Universal's letters did not name Art Line as the source of the allegedly infringing products, Universal did inform American Stores that Art Line's Animals are the subject of Universal's letter.

On February 18, 1997, Art Line filed a Complaint against Universal. In Count I, Art Line seeks a declaratory judgment of non-infringement. In Count II, Art Line asserts a claim for trade libel. In Counts III and IV, Art Line asserts claims for unfair competition in violation of the Lanham Act and common law. In Count V, Art Line asserts a claim for violation of the Illinois Consumer Fraud Act and Deceptive Trade Practices Act.

On March 31, 1997, Universal filed a counterclaim against Art Line. In Universal's counterclaim, Universal alleges that Art Line copied Universal's frog, tortoise, squirrel, and rabbit. For the first time, Universal also alleges that Art Line copied Universal's raccoon and fox. Universal alleges a claim for copyright infringement, unfair competition in violation of the Lanham Act and common law, and violation of the Illinois Consumer Fraud Act and Deceptive Trade Practices Act.

On April 14, 1997, Art Line's attorneys wrote Universal's attorneys and insisted that Universal cease "tell[ing] current or potential Art Line customers or anyone else in the indoor/outdoor statuary industry that Art Line is infringing on any of Universal's intellectual property." Universal rejected Art Line's demand. Consequently, Art Line moves the court for a preliminary injunction, enjoining Universal from notifying Art Line customers or anyone else in the indoor and outdoor statuary industry that Art Line's filled Animals infringe Universal's intellectual property.

### II. DISCUSSION

In order for the court to enter a preliminary injunction, the movant must demonstrate that (1) it is likely to succeed on the merits, (2) it has no adequate remedy at law, and (3) it will suffer irreparable harm in the

---

1. Since Universal did not refute the facts Art Line presented, the court will consider the facts undisputed for the limited purpose of this motion.

absence of injunctive relief. *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir.1996). If the movant demonstrates these elements, the court then balances the irreparable harm to the movant against the harm which would be suffered by the non-movant, as well as non-parties, if preliminary relief is granted. *Id.* The court uses a "sliding scale" approach to this balancing; that is, "the more likely it is that [the movant] will succeed on the merits, the less the balance of irreparable harms need weigh toward its side...." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir.1992).

## A. Likelihood of Success on the Merits

The Seventh Circuit has opined that a party need only demonstrate that it has a "better than negligible" chance of succeeding on the merits to justify an injunctive relief *Chicago Acorn v. Metro. Pier & Exposition Auth.*, 941 F.Supp. 692, 705 (N.D.Ill.1996) (*citing Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988)); *see also Cleveland Hair Clinic, Inc. v. Puig*, No. 96 C 3560, 1996 WL 691432, at *14 (N.D.Ill.1996); *Brunswick Corp. v. Jones*, 784 F.2d 271, 274 (7th Cir.1986) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that "the plaintiff's chances are better than negligible ...."'") (*quoting Omega Satellite Prod. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982)).

### 1. Non-infringement

The manufacture, distribution and/or sale of an unauthorized copy which is substantially similar to a protected work infringes on the copyright in the work. *See* 17 U.S.C. §§ 106, 501(a); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir.1994) (finding copyright infringement of soft-sculptured animal heads and tails on duffel bags); *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir.1982).

To prevail in its declaratory action, Art Line must show that Universal did not own a valid copyright, or that Art Line did not copy Universal's copyrighted work. *Wildlife Express*, 18 F.3d at 507. Art Line can show

that it did not copy Universal's copyrighted work if "(1) the similarities between the works are not sufficient to prove copying, or (2) it is established that one work was arrived at independently without copying." *Id.* at 508.

### a. Copyright Protection

Following the *Wildlife Express* analysis, the court first considers the validity of Universal's claimed copyright. *See id.* Certificates of registration are prima facie evidence of valid copyrights. *Id.* Although such evidence may be rebutted, *id.*, Art Line makes no attempt to do so. As such, the court accepts Universal's assertion that Universal's frog, tortoise, squirrel, rabbit, raccoon and fox are protected.

The question then becomes whether Art Line copied Universal's statuary animals. *See Wildlife Express*, 18 F.3d at 507. In determining copying, the court will consider whether Art Line had access to Universal's statuary animals and whether Art Line's Animals are substantially similar to Universal's statuary animals.

### b. Access

Broad public display of a product may give rise to an inference of access. *Eve of Milady v. Impression Bridal, Inc.*, 957 F.Supp. 484, 488–89 (S.D.N.Y.1997) (inferring access from placement of a national magazine advertisement for copyrighted product); *see also Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir.1988) (noting that access may be inferred from longstanding and wide dissemination). *Cf. Selle v. Gibb*, 741 F.2d 896 (7th Cir.1984) (holding that limited play of a song inadequate to demonstrate access). A demonstration of access does not require proof of actual viewing, but proof of the opportunity to view the copyrighted work. *Wildlife Express*, 18 F.3d at 508.

Although Art Line's consultant designer, Harry Brown ("Brown"), states that he did not refer to Universal's statuary animals while creating Art Line's Animals, Art Line does not argue that it did not have an opportunity to view Universal's statuary animals. Thus, the court will assume that Universal's

statuary animals were accessible to Art Line, and consider whether the two works are substantially similar.

### c. Substantial Similarities

■ In this case, both Art Line and Universal produce filled, naturalistic animal statuary products. When reproduction of a live creature is at issue, the court focuses on the aspects of the work which are not required in the depiction of that creature. *Id.* at 508. Thus, "a copyright holder must ... prove substantial similarity to those few aspects of the work that are not required by the idea." *Id.* at 508 (*quoting Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600–07 (1st Cir.1988)).

■ As stated in *Wildlife Express,* courts determine whether two works are substantially similar by applying the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Id.* at 509 (*quoting Atari,* 672 F.2d at 614). That is, courts look to whether the ordinary observer would tend to overlook the disparities, unless setting out to detect them, and to regard the aesthetic appeal of the two works as the same. *Id.*

■ Relying on *Wildlife Express,* Universal offers nothing more than a conclusory statement that Art Line's Animals' pose, posture, and facial expression are nearly identical to those of Universal's statuary animals', evidenced in the photographs Universal submitted to the court. Universal does not identify the specific similarities that are not required in the depiction of each animal. Art Line, on the other hand, identifies significant differences of the two works with respect to the animals' pose, coloration, and details.

Through photographic comparison of Art Line's Animals with Universal's statuary animals, Art Line has met its burden of showing

that it has more than a negligible chance of proving that the two works are not substantially similar. Brown's distinctive artistic and creative style is evident in each of Art Line's Animals. Thus, the court is convinced that there is more than a negligible chance that Art Line can show that an ordinary observer would find that the aesthetic appeal of the two works is not the same.

Using the photographs Universal attached to its Answer to Art Line's Complaint[2], the court will briefly identify some of the dissimilarities between the two works. The following list of dissimilarities is not meant to be an exclusive list.[3]

### i. Frog

The most apparent dissimilarity between Art Line's frog and Universal's frog is the color. (*See* Universal's Figure 4 attach. to its Answer.) The first difference in color is that Art Line's frog has yellow eyes with oval pupils, whereas Universal's frog has brown eyes with round pupils. Secondly, Art Line's frog has bold, dark stripes on its legs and dark shading on its body. Universal's frog's stripes and shading are less visible. Lastly, Art Line's frog has light green shading on its chest, whereas Universal's frog has an off-white shading on its chest. Although it is true that both frogs are posed in a classic bull frog pose, the difference in artistic creativity is apparent from the color. Thus, Art Line has sufficiently shown the distinct aesthetic appearance of its frog.

### ii. Tortoise

An apparent dissimilarity between Art Line's tortoise and Universal's tortoise is the shell. (*See* Universal's Figure 5 attach. to its Answer.) Art Line's tortoise has a high domed shell; Universal's tortoise's shell is more curved or rounded. In addition, the individual ring plates, making up the shell, are more pronounced on Art Line's tortoise. As a result, it appears from the photographs that Art Line's tortoise's shell would feel

---

**2.** Although the dissimilarities between Art Line's Animals and Universal's statuary animals are more apparent in Art Line's photographs, the court will use Universal's photographs.

**3.** Brown articulated the dissimilarities between Art Line's Animals and Universal's statuary animals in greater detail. (*See* Brown Aff. at Ex. Z).

bumpier than Universal's.[4] Moreover, the radiating lines on Art Line's tortoise's shell are more visible. Thus, Art Line has sufficiently shown the distinct aesthetic appearance of its tortoise.

### iii. Squirrel

An apparent dissimilarity between Art Line's squirrel and Universal's squirrel is the fur. (See Universal's Figure 6 attach. to its Answer.) Art Line's squirrel's fur is brown with white fur on its mouth, neck, chest and stomach area. Universal's squirrel's fur is tan with cream fur on its mouth and stomach area. Additionally, the fur on Art Line's squirrel's tail is consistent with the fur on its body. Universal's, on the other hand, has thicker and waiver fur on its tail. Art Line's squirrel also appears younger and more playful than Universal's squirrel. Thus, Art Line has sufficiently shown the distinct aesthetic appearance of its squirrel.

### iv. Rabbit

With respect to the rabbit, the court notes that the two works look more similar than the other animals. (See Universal's Figure 7 attach. to its Answer.) However, certain details of Art Line's rabbit, taken as whole, give Art Line's rabbit a distinct appearance. First, Art Line's rabbit's fur texture appears more detailed. For instance, the fur texture on Art Line's rabbit's chest appears thicker and more pronounced to show the gathering of its fur when seated with its feet resting on the ground in front of its chest. Secondly, Art Line's rabbit's eyes are larger and rounder than Universal's. Thirdly, Art Line's rabbit's ears appear flatter and furrier than Universal's. Lastly, Art Line's rabbit's tail is larger and fluffier than Universal's. As result of these details, Art Line's rabbit appears cuddlier than Universal's. The court further notes that the rabbits are posed differently. Thus, Art Line has sufficiently shown the distinct aesthetic appearance of its rabbit.

### v. Raccoon

As to the raccoon, the only similarity is the pose. (See Universal's Figure 8 attach. to its Answer.) However, Brown states that the pose is a classic raccoon pose. (See Brown Aff. at Ex. Z.) Universal did not present any evidence to refute Brown. Despite the fact that the raccoons are similarly posed, Art Line's raccoon has a different aesthetic appeal than Universal's raccoon.

Art Line's raccoon is much larger than Universal's. In addition, Art Line's raccoon's fur is tannish-brown and sculpted in rows of coarse texture. Universal's raccoon's fur is grey and of smooth texture. Art Line's raccoon's ears are broad and rounded. Universal's raccoon's ears are narrow and slightly pointed. Lastly, Art Line's raccoon's black face mask is larger and oval shaped. Universal's raccoon's black face mask is narrower. Thus, Art Line has sufficiently shown the distinct aesthetic appearance of its raccoon.

### vi. Fox

An apparent distinction between Art Line's fox and Universal's fox is the shading. Art Line's fox has a lot of shading throughout the fox's ear, face, body, and tail. Universal's fox has little shading. Another apparent distinction is the fox's face. Art Line's fox has a broad face with a tiny nose. Universal's fox has a narrow face with a long nose. Unlike Art Line's fox's large, piercing eyes, Universal's fox's eyes appear small and hidden as each eye is placed at the then end of an oval shaped area of white fur. Lastly, the pose is noticeably different. Although both foxes are seated, Art Line's fox is seated upright, whereas Universal's fox is seated low to the ground, as if it is looking up from a lying position. Thus, Art Line has sufficiently shown the distinct aesthetic appearance of its fox.

### d. Independent Creation

■ Regardless of any similarities, Art Line can prevail in its declaratory action if it can prove that its Animals were arrived at

---

**4.** Since the individual statuary animals were not provided, the court did not have an opportunity to feel the texture of the animals.

independently without copying. *See Wildlife Express,* 18 F.3d at 508. In further support of its motion for preliminary injunction, Art Line argues that Brown independently created Art Line's Animals.

Art Line authorized Brown in the spring of 1995 to design the filled Animals at issue. (Brown Aff. at 5.) Brown states that he has been "designing lawn and garden ornaments for over 30 years." (Brown Aff. at 3.) Brown describes his design process in great detail.

First, Brown went through his file of "reference materials, which include catalogs, postcards, greeting cards, magazines, and other printed materials, and [also looked] over items [he] previously designed." (Brown Aff. at 5.) Then, Brown went to the Wilmette Public Library for additional reference materials. *Id.*

Next, Brown admits that he referred to some giftware he purchased from a variety of manufacturers and that he visited garden centers, gift shops, and other retail outlets for ideas, as "[n]o designer can develop designs for new products in a vacuum." (Brown Aff. at 3–4.) However, Brown states that he "did not refer to any Universal catalogs, promotional materials, or products when [he] designed any of the designs at issue in this lawsuit." (Brown Aff. at 5.)

Relying on various reference materials, Brown sketched designs of the animals, showing dimensions and details. (Brown Aff. at 4.) Thereafter, Brown sent completed drawings, along with reference materials when specific features could not be clearly shown in a two-dimensional line drawing, to a model making company. *Id.*

Universal does not offer any evidence to refute Art Line's evidence of independent creation. Universal merely states that Art Line's Animals are substantially similar to Universal's statuary animals. However, as discussed above, the court finds that Art Line has sufficiently shown that its Animals are not substantially similar to Universal's.

Further, Brown has sufficiently evidenced that he has independently created and designed Art Line's Animals. Attached to Brown's affidavit were his drawings of the Animals, and several reference materials which depicted live animals. Unlike in *Ty, Inc. v. GMA Accessories, Inc.,* 959 F.Supp. 936, (N.D.Ill.1997), Art Line's Animals do appear live, as it is its objective.

In *Ty,* GMA's designer, allegedly drew inspiration from various books and photographs, as well as the Academy–Award–nominated talking animal movie Babe, which she watched several times. *Id.* at 940–41. All of those sources depicted live pigs. *Id.* However, because the pigs and cows at issue did not appear live at all, the court found that GMA failed to show that its pig and cow designs were independently created. *Id.*

In the instant case, Art Line's Animals do resemble Brown's drawings and do appear live. Thus, the court is convinced that Art Line has more than a negligible chance of showing that Brown independently created and designed Art Line's Animals and, therefore, that there was no infringement. *See Wildlife Express,* 18 F.3d at 508.

### 2. Unfair Competition

In further support of its motion for injunctive relief, Art Line argues that it has more than a negligible chance of success on its claims for trade libel, unfair competition in violation of the Lanham Act and common law, and violation of the Illinois Consumer Fraud Act and Deceptive Trade Practices Act. In arguing the likelihood of Art Line's success on these claims, Art Line and Universal focus the court's attention to the following issue: whether Universal's notice of infringement letters contain false or misleading statements, or whether Universal sent such letters in bad faith.

It has long been the law in this circuit that an intellectual property right "holder has the right to defend himself against infringement and to warn purchasers from the alleged infringer that they, too, might be liable to him" through the sending of infringement letters. *Spangler Candy Co. v. Crystal Pure Candy Co.,* 235 F.Supp. 18, 32 (N.D.Ill.1964); *see also Chromium Indus., Inc. v. Mirror Polishing & Plating Co. Inc.,* 448 F.Supp. 544, 558 (N.D.Ill.1978) (dealing with infringement letters in patent case); *Airtex Corp. v. Shelley Radiant Ceiling Co.,*

400 F.Supp. 170, 177 (N.D.Ill.1975) (dealing with infringement letters in patent case). However, the right to send infringement letters is limited. A copyright owner may not send infringement letters which (a) contain false statements or (b) are issued in bad faith. *Id.* at 32.

### a. False Statements

██ Relying on *Abbott Labs.*, Art Line argues that Universal's letters contain false statements in that, contrary to the letters, Art Line is not infringing on Universal's copyrights. In *Abbott Labs.*, the court concluded that Mead's description of its Ricelyte product was literally false. 971 F.2d at 13. Mead described Ricelyte as a "rice-based oral electrolyte solution" and asserted that it contained "rice carbohydrate molecules" even though Ricelyte did not contain any rice at all. *Id.*

In the instant case, the only alleged false statement is Universal's allegation of infringement. Universal's allegation represents Universal's conclusion and belief, rather than a factual statement. Art Line has not cited to any relevant authority in support of its argument that it, by establishing that it did not infringe Universal's copyright, can prove that Universal's letters contained false statements. As such, the court is not convinced that Universal's letters contained false statements.[5] Art Line has not met its burden of showing that it has more than a negligible chance of showing that Universal's letters contain false or misleading statements. Thus, the court will address whether Universal's letters were issued in bad faith.

### b. Bad Faith

██ Art Line argues that Universal's letters were issued in bad faith, evidenced by Universal's timing. According to Art Line, Universal saw Art Line's Animals on August 11–14, 1996, when Art Line debuted its entire new line at the National Hardware Show. Art Line further asserts that Universal knew that Art Line was actively marketing all of the items displayed at the trade show. Nev-

ertheless, Art Line argues that Universal did not assert any copyright infringements until Hechinger, a major account, decided in January 1997 to carry Art Line's Animals rather than Universal's statuary animals.

In addition, Art Line argues that the court can infer Universal's bad faith from Universal's failure to promptly follow their letters with an infringement lawsuit. *See Airtex Corp.*, 536 F.2d at 155–56. Art Line argues that it sent a letter to Universal, advised Universal that its allegations of infringement were without merit, and demanded Universal to retract its allegation. Because Art Line's letter was met with "deafening silence," Art Line filed the instant action on February 18, 1997. Art Line argues that Universal did not promptly follow its letters with a lawsuit as it waited until March 31, 1997, to file a counterclaim against Art Line.

Universal did not refute the time-line Art Line presented. For the purpose of this motion, the court does infer bad faith from the order of events as Art Line has described. As such, the court is convinced that Art Line has met its low burden of showing that it has more than a negligible chance of proving that Universal issued its notice of infringement letters in bad faith.

Based on all of the aforementioned reasons, the court is convinced that Art Line has met its low burden of showing that it has more than a negligible chance of succeeding on the merits. Thus, the court will examine the remaining factors to determine whether a preliminary injunction is warranted.

### B. No Adequate Remedy at Law

██ Art Line argues that if Universal is not enjoined from sending infringement letters to Art Line's customers or anyone else in the indoor and outdoor statuary industry, it is likely that Art Line will lose a considerable amount of business, not only as to the statuary animals at issue, but other products as well. More importantly, Art Line argues that Art Line's reputation will be damaged. Thus, Art Line argues that "if Universal is allowed to keep disparaging Art Line until

---

5. The Seventh Circuit has "made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir.1995).

Art Line wins at trial, 'Art Line will have won the battle but lost the war." (Art Line Reply Br. at 2.)

The court is convinced that the damage Art Line is likely to suffer, if Universal is not enjoined, is not easily measurable in monetary terms. Thus, Art Line has met its burden of showing that no adequate remedy at law exists.

### C. Irreparable Harm

A presumption of irreparable harm may arise upon a showing of likelihood of success on the merits and a prima facie case. *See Jackson v. MPI Home Video*, 694 F.Supp. 483, 488 (N.D.Ill.1988). Even without the presumption, Art Line has met its burden of showing the irreparable harm it will suffer if Universal is not enjoined.

Art Line argues that the 1998 selling season for statuary begins in June with the Colorado Springs trade show, and ends in August with the National Hardware Show. As such, if Universal is not enjoined, Art Line argues that "Universal will not only divert Art Line sales to its own benefit, but it will besmirch Art Line's reputation." (Art Line Reply Br. at 2.) The court agrees; thus, the court must balance the hardships the parties are likely to suffer.

### D. Balance of Hardships

Art Line argues that the balance of hardships weighs in favor of Art Line as its reputation may be permanently damaged if Universal is not enjoined. Universal argues that "[e]ach time an infringing product is sold in place of Universal's product, Universal loses both its hard-earned profit and its reputation." (Universal Resp. Br. at 10.)

The court is mindful, as is Art Line, that Universal's letters may prevent loss of profits. However, Universal will have an adequate opportunity to recover its calculable loss of profits if it prevails at trial.

The incalculable damage to each party's reputation is of greater importance in the instant analysis. Once one's reputation is damaged, it cannot be easily remedied. Universal is alleging that Art Line has infringed Universal's copyrights. Such an allegation could harm Art Line's business reputation, from which Art Line may not recover. In addition, Art Line's design consultant's reputation is at issue, since he was responsible for designing the Animals.

Although Universal states that its reputation will be harmed each time Art Line's Animals are purchased over its statuary animals, Universal does not articulate how, or to what degree, its reputation will be harmed. Thus, the court finds that the harm Art Line is likely to suffer, as it is alleged to be a copyright infringer, outweighs this amorphous harm Universal alleges. Using a "sliding scale" approach to this balancing, the court is convinced that the balance weighs in favor of enjoining Universal from sending notice of infringement letters to Art Line's current or potential customers, or anyone else in the indoor and outdoor statuary industry.

## III. CONCLUSION

Art Line has shown that it has more than a negligible chance of success on the merits, that it has no adequate remedy at law, and that it would suffer greater irreparable harm if Universal is not enjoined from sending notice of infringement letters to Art Line's current or prospective customers, or anyone else in the indoor and outdoor statuary industry. Consequently, Art Line has met its burden of showing that an injunctive relief is warranted in this case. Universal shall not send notice of infringement letters until the case is resolved on the merits.

Because injunctive relief has been granted, the court will set a prompt trial date. The parties shall appear for status with an agreed discovery schedule on July 14, 1997, at 9:30 a.m.

**IT IS SO ORDERED.**