In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2724

Rene Zambrano,

Plaintiff-Appellant,

v.

Jennifer Reinert, in her official capacity
as Secretary of the Wisconsin Department
of Workforce Development,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-C-35-S--John C. Shabaz, Judge.

Argued November 13, 2001--Decided May 29, 2002


   Before Harlington Wood, Jr., Easterbrook, and
Kanne, Circuit Judges.

   Kanne, Circuit Judge.  After being denied
unemployment compensation benefits in
accordance with Wis. Stat. sec.
108.02(15)(k)(14) (the "Cannery Rule"),
Rene Zambrano filed suit pursuant to 42
U.S.C. sec. 1983, alleging that the
Cannery Rule was in conflict with two
federal statutes and violated the Equal
Protection Clause of the Fourteenth
Amendment. The district court upheld the
validity of the Cannery Rule, and we
affirm.

I.  Background

   Under Wisconsin's unemployment
compensation scheme, "base period" wages
count towards unemployment compensation
eligibility. See Wis. Stat. sec.sec.
108.02(4) & 108.06. Base period wages
include, inter alia, wages earned during
employment, see id. at sec. 108.02(4m),
and "employment" is defined as "any
service . . . performed by an individual
for pay." Id. at sec. 108.02(15)(a).
However, in applying the Cannery Rule,
the definition of employment does not
include services

[b]y an individual for an employer which
is engaged in the processing of fresh
perishable fruits or vegetables within a

given calendar year if the individual has been employed by the employer solely within the activeprocessing season or seasons, as determined by the department [of workforce development], of the establishment in which the individual has been employed by the employer, and the individual's base period wages with the employer are less than the wages required to start a benefit year under s. 108.04(4)(a), unless the individual was paid wages of $200 or more for services performed in employment or other work covered by the unemployment insurance law of any state or the federal government, other than work performed for the processing employer, during the 4 most recently completed quarters preceding the individual's first week of employment by the processing employer within that year.

Id. at sec. 108.02(15)(k)(14). In other words, for a seasonal fruit or vegetable processing worker to meet the definition of "employment," and thus be eligible to receive unemployment compensation benefits, he must have 1) been employed with the processor outside the "active processing season"; 2) been separately eligible under Wis. Stat. sec. 108.04(4)(a); or 3) earned over $200 in another job during the time period outlined in the statute. See id. at sec. 108.02(15)(k)(14).

Zambrano, a Texas resident, provided seasonal labor for vegetable processor Seneca Foods, Inc. in Mayville, Wisconsin from June 11 to October 7, 1999, earning $10,290.98. On April 4, 2000, Zambrano filed for unemployment compensation in Wisconsin. Because Zambrano was employed by Seneca, a processor of vegetables, the Department for Workforce Development (the "DWD") noted that his claim for unemployment compensation fell under the purview of the Cannery Rule and thus found that Zambrano was ineligible to receive unemployment compensation benefits.

To be eligible for benefits, Zambrano had to meet one of three conditions listed in the Cannery Rule: First, Zambrano would have had to have worked for Seneca outside the active processing season. See id. at sec. 108.02(15)(k)(14). Zambrano concedes that he did not, and therefore this provision is irrelevant to our present review.

Second, he would have been eligible if his "base period wages" with Seneca were equal to or greater than the wages described in Wis. Stat. sec. 108.04(4)(a). See id. at sec. 108.02(15)(k)(14). To start a benefit year under that section, an applicant's base period wages must, among other things, be equal to at least four times his weekly benefit rate "in one or more quarters outside of the quarter within the claimant's base period in which the claimant has the highest base period wages." Id. at sec. 108.04(4)(a). In this case, as Zambrano concedes, the amount of wages that he earned during this time period was $1,159.81, and this amount was less than four times his weekly benefit rate of $305 (i.e., 4 x $305 = $1,200). Thus, the DWD concluded that Zambrano did not meet the second condition to be eligible for unemployment compensation benefits under the Cannery Rule.

Finally, Zambrano would have been entitled to receive benefits had he earned more than $200 from an employer other than Seneca during the four most recently completed quarters preceding his first week of work at Seneca. See id. at sec. 108.02(15)(k)(14) (the "Other Employment" provision). Zambrano's only income from Wisconsin employers other than Seneca that year was $1,250 that he earned for work performed for Lifestyle Staffing during May and June 1999. However, because these wages were earned in the same quarter as the start of his employment with Seneca, and not in the preceding quarter, the DWD concluded that Zambrano was not eligible to receive benefits because he did not meet the requirements of the Other Employment provision of the Cannery Rule. See id.

As a result of this ruling, Zambrano brought suit against Jennifer Reinert in her official capacity as Secretary of the DWD, alleging that the Cannery Rule ran afoul of two federal statutes and that it violated principles of equal protection. The district court granted summary judgment in favor of the Secretary, upholding the Cannery Rule in the face of Zambrano's challenges.

II.  Analysis

The facts of this case are essentially

undisputed. The only issues on appeal involve the interpretation of statutory and constitutional provisions. We review these questions of law de novo. See, e.g., Publ'ns Int'l Ltd. v. Meredith Corp., 88 F.3d 473, 478 (7th Cir. 1996).

A.  Social Security Act

Initially, Zambrano contends that the Cannery Rule conflicts with section 503(a)(1) (the "When Due Clause") of the Social Security Act (the "SSA"). Under the SSA, federal funds are made available to states in order to encourage them to enact unemployment insurance laws. See 42 U.S.C. sec.sec. 501-04; see also Jenkins v. Bowling, 691 F.2d 1225, 1228 (7th Cir. 1982). However, before the federal government will provide funds to a state to administer its unemployment insurance laws, the Secretary of Labor must certify that the recipient state's unemployment program meets certain statutory requirements. See 42 U.S.C. sec.sec. 502-03; Jenkins, 691 F.2d at 1228. The When Due Clause states that one of those requirements is that the state's program must provide for "such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due." Jenkins, 691 F.2d at 1228 (quoting 42 U.S.C. sec. 503(a)(1)). The basic thrust of the When Due Clause is timeliness--the state should determine who is eligible to receive unemployment compensation and make payments to such individuals at the earliest stage that is administratively feasible. See, e.g., California Human Resources Dept. v. Java, 402 U.S. 121, 131, 91 S. Ct. 1347, 28 L. Ed. 2d 666 (1971).

The first step in deciding whether a state statute violates the When Due Clause is to determine whether the state provision is an administrative provision or an eligibility requirement. See Pennington v. Didrickson, 22 F.3d 1376, 1381 (7th Cir. 1994) (Pennington I), rev'd on other grounds sub nom. Pennington v. Doherty, 138 F.3d 1104, 1105 (7th Cir. 1998) (Pennington II). An administrative provision governs when eligibility is determined or when unemployment benefits are paid, while an eligibility requirement governs who is eligible to receive unemployment

compensation benefits. See Pennington I, 22 F.3d at 1385-87. Drawing this distinction is important because eligibility requirements do not fall under the purview of the When Due Clause, whereas administrative provisions do. See id. 1381 (stating that eligibility requirements are "beyond the reach of the 'when due' clause").

Zambrano contends that the Other Employment provision of the Cannery Rule violates the When Due Clause because it operated to exclude the wages he earned at Lifestyle Staffing from his eligibility determination. Zambrano's claim is unavailing, however, because the Other Employment provision sets forth a method of determining whether work performed by an applicant is "employment" and thus whether the applicant is eligible to receive benefits. See Wis. Stat. sec. 108.02(15)(k)(14). Therefore, because it determines who is eligible to receive benefits, as opposed to when the eligibility determination is made or when an eligible person receives benefits, the Cannery Rule is an eligibility requirement that is "beyond the reach of the 'when due' clause." Pennington I, 22 F.3d at 1381.

Zambrano relies on Pennington I to support his argument that the Cannery Rule is an administrative provision. In that case, we addressed whether the definition of "base period" in section 237 of the Illinois Unemployment Insurance Act (the "IUIA"), 820 ILCS 405/237, violated the When Due Clause. See Pennington I, 22 F.3d at 1377. We noted that in order to be eligible for unemployment compensation in Illinois, a claimant must have earned sufficient wages during the "base period." Id. at 1378. We further noted that the IUIA defined a base period as "the first four of the last five completed calendar quarters immediately preceding the benefit year," thus excluding the wages that a claimant earned in the quarter immediately preceding the quarter in which the claimant filed a claim (the "lag quarter"). Id. (citation omitted). We concluded that excluding wages earned during the lag quarter had the purpose of accommodating the time needs of those administering Illinois' unemployment compensation program. See id. at 1387. We also concluded that the lag quarter

affected the timing of when the claimant would file his claim. See id. In sum, the IUIA did not determine what wages would be considered, but rather when certain wages would be considered. See id. at 1385-87. Therefore, we held that the provision of the IUIA was an administrative provision subject to the When Due Clause. See id. at 1387.

On appeal, Zambrano notes that Pennington I was abrogated by federal statute. See Pennington II, 138 F.3d at 1104-05. He posits, and we agree, that the Balanced Budget Act of 1997, sec. 5401 does not apply to the Cannery Rule because that Act only applies to state law provisions that define "base periods." However, he asserts that the "reasoning of the original Pennington decision . . . remains apt, since the base period and the cannery rule period serve similar purposes." Assuming, arguendo, that Zambrano is correct in this assertion, his claim is still unavailing because our case is distinguishable from Pennington I.

In contrast to the lag quarter at issue in Pennington I, the Other Employment provision affects what wages will be considered, not when they will be considered. Further, the Cannery Rule did not have the effect of requiring Zambrano to delay in filing his claim for unemployment compensation, but rather only determined whether or not Zambrano was eligible to receive unemployment compensation benefits based on his earnings in non-food processing jobs before his work with Seneca. Because the wages that the Other Employment provision excluded are not those earned prior to filing a claim, but rather those earned in the same quarter as when the claimant started working for a fruit or vegetable processors, Zambrano could have waited forever and still would have been ineligible to receive benefits under the Cannery Rule. Therefore, in the absence of the Cannery Rule's delay of either the determination or the payment of unemployment compensation benefits, we hold that it does not violate the When Due Clause.

B.  Federal Unemployment Tax Act

The Federal Unemployment Tax Act ("FUTA") taxes employers on the wages

they pay to their employees and provides a tax credit for employers' contributions to federally-approved state unemployment compensation laws. See 26 U.S.C. sec.sec. 3301 & 3302(a)(1). For the Secretary of Labor to approve a state's unemployment compensation law (as the Secretary of Labor did in this case), he must find, among other things, that the state law does not operate to cancel "wage credits" or reduce "benefit rights" for reasons other than fraud or misconduct. Id. at sec. 3304(a)(10).

Zambrano asserts that the Cannery Rule cancels wage credits or benefit rights for reasons other than fraud or misconduct and thus violates 26 U.S.C. sec. 3304(a)(10). In order for the Cannery Rule to have cancelled Zambrano's wage credits or reduced his benefit rights, he must have had such wage credits or benefits in the first place. Thus, the initial issue is whether Zambrano earned wage credits or benefit rights--a matter of state law. We have previously noted that states have "free rein" to design eligibility requirements for receiving unemployment compensation. Pennington I, 22 F.3d at 1382. In the present case, eligibility is calculated from wages earned during employment-- employment being a statutorily defined term. See Wis. Stat. sec.sec. 108.02(4) & 108.02(15)(a). The Cannery Rule qualifies that statutory definition of employment, excluding wages earned by fruit and vegetable processors unless those workers meet one of the three aforementioned conditions. See id. at sec. 108.02(15)(k)(14). As discussed above, the Cannery Rule merely sets forth requirements for being eligible to receive unemployment compensation, and Zambrano concedes that he did not meet those requirements. Therefore, he never had any wage credits or benefit rights to cancel or reduce in the first place, and accordingly, the application of the Cannery Rule in this case does not violate FUTA.

C.  Equal Protection

Zambrano argues that seasonal fruit and vegetable workers are denied equal protection because they are subject to different eligibility requirements under Wisconsin's unemployment compensation laws than are other workers. Seasonal

fruit and vegetable workers are not a suspect classification, nor does Zambrano's claim implicate fundamental rights. Therefore, we will address Zambrano's equal protection claim under the familiar rational basis test, see, e.g., Turner v. Glickman, 207 F.3d 419, 424 (7th Cir. 2000), and uphold the Cannery Rule if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).

The Secretary asserts that Wisconsin's interest in treating seasonal fruit and vegetable processing workers differently is to ensure that workers receiving unemployment compensation benefits are firmly committed to the Wisconsin labor market. Because fruit and vegetable processing occurs during only three to four months a year, employment availability and duration in this line of work is necessarily limited. Nevertheless, under the Cannery Rule, individuals working in seasonal fruit and vegetable processing can show a commitment to the Wisconsin labor market, and consequently gain unemployment compensation eligibility, by meeting the requirements of the Other Employment provision. See Wis. Stat. sec. 108.02(15)(k)(14). Under this provision, seasonal fruit and vegetable processors are eligible to receive benefits if they earned a mere $200 in unrelated employment in the year prior to the quarter in which they began working for seasonal processors. See id. Thus, the Other Employment provision of the Cannery Rule has a rational basis for its classification, which is sufficiently linked to the government purpose of ensuring commitment to the Wisconsin labor market. See FCC, 508 U.S. at 313.

III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the Secretary.

Easterbrook, Circuit Judge, concurring. This case is shot through with procedural issues, some concerning subject-matter

jurisdiction. Neither the parties nor the district judge said "boo" about any of them. Following that lead, my colleagues let all pass in silence. Yet jurisdictional questions should not be swept under the rug. What one can say for the parties' assumption (and the majority's silence) is that they are following the Supreme Court's example, for it has resolved on the merits a series of cases in which one or more of the same problems lurked in the background. See, e.g., King v. Smith, 392 U.S. 309 (1968); Rosado v. Wyman, 397 U.S. 397 (1970); California Department of Human Resources v. Java, 402 U.S. 121 (1971); Fusari v. Steinberg, 419 U.S. 379 (1975); Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471 (1977). In Jenkins v. Bowling, 691 F.2d 1225, 1228 (7th Cir. 1982), we wrote that these years of neglect by the Supreme Court made the issues "too well settled to be questioned by us". But times have changed since 1982. The Justices now devote greater attention to the issues that arise in cooperative programs such as unemployment insurance, and while this appeal was under advisement the Court granted certiorari in a case that poses one of the questions that we deemed "well settled" in 1982--whether 42 U.S.C. sec.1983 allows a court to order a state official to act in a particular way, when the relevant federal statute names cessation of federal funding as the only remedy. See Gonzaga University v. Doe, cert. granted, 122 S. Ct. 865 (2002) (argued April 24, 2002). So it is time to think about a few issues that for too long have been ignored.

Rene Zambrano applied for unemployment insurance in Wisconsin and was turned down on the basis of Wis. Stat. sec.108.02(15)(k)(14), known as the Cannery Rule. This law makes it hard for a person engaged in seasonal agricultural employment to obtain unemployment benefits when the season ends; Wisconsin's legislature likely thought that the employee would find work in another state whose agricultural products mature on a different schedule. Benefits are available only if the worker received $200 in wages from a different Wisconsin employer, in a different calendar quarter. This tests whether the applicant has an enduring connection to the state's labor force. Zambrano contends that the

Cannery Rule violates three laws with superior authority: sec.303(a)(1) of the Social Security Act, 42 U.S.C. sec.503(a)(1), known as the When Due Clause; 26 U.S.C. sec.3304(a)(10), part of the Federal Unemployment Tax Act; and the Equal Protection Clause of the Fourteenth Amendment. My colleagues hold that the Cannery Rule is compatible with the Constitution and the two federal statutes. I agree with their substantive analysis and thus explore only the question whether Zambrano's claims should be here in the first place.

1. No federal law requires any state to have an unemployment-insurance program, or to follow any particular rules if the state chooses to have a program. But the federal government does provide tax breaks for employers and reimbursements for state treasuries if states adopt pro grams with certain features. Section 303 of the Social Security Act conditions reimbursement of the state's administrative expenses on certification by the Secretary of Labor that the state's law meets these conditions. (Employers pay for the benefits; the federal assistance covers overhead./1) The Secretary "shall make no certification for payment to any State unless he finds that the law of such State . . . includes provision for . . . [s]uch methods of administration . . . as are found by the [Secretary] to be reasonably calculated to insure full payment of unemployment compensation when due". In other words, the national government won't cover the costs of slapdash implementation. Like other buyers, the Treasury wants to get what it pays for. One would suppose, given the language of the When Due Clause, that the right way to contest a certification is to sue the Secretary of Labor under the Administrative Procedures Act, 5 U.S.C. sec.sec. 701-06, and that the right remedy if the plaintiff prevails is an order revoking the certification, and thus suspending federal funding until the state gets its act in gear. But Zambrano sued a state official, not the Secretary (who as far as I know is unaware that her certification of Wisconsin's program has been questioned), and seeks benefits rather than an order suspending reimbursement. The one remedy that a court cannot provide is suspension of funding, because the Secretary of Labor,

as a non-party, cannot be bound by the judgment.

What the Justices said about this when they briefly considered a related issue in Rosado is: The more remedies, the merrier. Does federal law forbid a specific-performance or back-benefits remedy against the state official? Only by foreclosing a given remedy, Rosado stated, may Congress preclude relief to the beneficiary of a social-welfare program (in Rosado, Aid for Families with Dependent Children). See 397 U.S. at 420-22. This view is of a piece with J.I. Case Co. v. Borak, 377 U.S. 426 (1964); Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970), and other decisions of the time that blithely created private rights of action for damages even if Congress had left enforcement to public officials and named specific remedies.

A lot of water has passed under the bridge since then, and the question is no longer whether the statute precludes a private right of action, but whether the law creates one. See, e.g., Cort v. Ash, 422 U.S. 66 (1975); Touche Ross & Co. v. Redington, 442 U.S. 560 (1979); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11 (1979); Aaron v. SEC, 446 U.S. 680 (1980); Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994). When the defendant is a state official, sec.1983 gets part of the way there, see Maine v. Thiboutot, 448 U.S. 1 (1980)--but the general language of sec.1983 must not be used to sidestep limitations built into another federal statute. See, e.g., Blessing v. Freestone, 520 U.S. 329 (1997); Golden State Transit Corp. v. Los Angeles, 493 U.S. 103 (1989). Section 1983 allows courts to enforce personal rights, but a statute may influence behavior without creating "rights." Conditional funding is an example. It does not create "rules," let alone "rights," for a state is free to turn down the money and escape the strings. The When Due Clause does not create rights in favor of workers or impose duties on states to pay particular benefits; it just tells the Secretary of Labor which states' administrative overhead may be reimbursed.

What is at stake is not just the difference between public and private

enforcement, or the difference between loss of subsidy and new substantive eligibility criteria--though these differences may be substantial. The main question is whether the courts will play by the rules that Congress has laid down. Enforcement through threats of funding cutoff is cumbersome. A Secretary of Labor with only one tool, an unwieldy hammer, may be reluctant to use it. Which may be exactly the point; the states' advocates in Congress may have succeeded in limiting remedies in order to increase states' leeway in operating-unemployment-insurance systems. Other cooperative programs have a different structure. For example, the Individuals with Disabilities Education Act, another federal program that attaches conditions to grants, has a clause, 20 U.S.C. sec.1403(a), requiring states that take the money to consent to suits by private persons. By requiring states to give up their immunity under the eleventh amendment, and by authorizing private suits elsewhere in the idea, Congress differentiated the idea from the unemployment insurance system. See Oak Park Board of Education v. Kelly E., 207 F.3d 931 (7th Cir. 2000). Congress put a lot more cash into idea grants than into unemployment-overhead grants,/2 so it was able to extract larger concessions. Wisconsin may be willing to give up the modest federal subvention to retain the Cannery Rule, though litigation of the kind exemplified by this suit would deny the state that choice. Zambrano wants us to say that it just does not matter what enforcement mechanisms Congress writes down. I see no reason why courts should strip the legislature of options in this way. Judges hobble legislators when they treat different statutory structures as if all said the same thing. Changing the conditions on which states have agreed to participate in a federal program-- by adding private to public enforcement and adding different remedies in the process--also has little to recommend it as an original matter.

The Social Security Act has two provisions like the clause in the idea, see 42 U.S.C. sec.sec. 1320a-2, 1320a-10, but neither applies to the chapter containing the When Due Clause. In the absence of such provisions, the eleventh amendment blocks retrospective monetary relief. See Regents of the University of

California v. Doe, 519 U.S. 425 (1997); Edelman v. Jordan, 415 U.S. 651 (1974); Paschal v. Johnson, 936 F.2d 940 (1991). And although, as Rosado observed, an order requiring a state to abide prospectively by the terms of a grant that it has accepted does not encounter constitutional obstacles, it does create other problems--foremost among them the problem of interpreting a discretionary norm in the absence of the discretion-holder. The When Due Clause forbids a federal grant unless the state has adopted "[s]uch methods of administration . . . as are found by the [Secretary] to be reasonably calculated to insure full payment of unemployment compensation when due". This is a double dose of discretion--first through the vague term "reasonably calculated" and second through naming the person to make that decision.

It is the Secretary of Labor, not a judge, who must determine whether a given state's apparatus is "reasonably calculated to insure full payment of unemployment compensation when due". The Secretary has approved Wisconsin's system, and her decision is entitled to the formidable protection of the Chevron doctrine. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Yet my colleagues do not ask whether the Secretary abused her discretion when concluding that Wisconsin's plan fit the elastic phrase "reasonably calculated". Instead they proceed as if these words were addressed to judges and the decision were ours. This is how the parties and the district court proceeded, how we approached the topic in earlier cases involving this language. See, e.g., Pennington v. Didrickson, 22 F.3d 1376 (7th Cir. 1984), subsequent decision, Pennington v. Doherty, 138 F.3d 1104 (7th Cir. 1998). It would be the normal way to proceed, if the When Due Clause were a rule creating personal rights (as it must be for sec.1983 to come into play). See Adams Fruit Co. v. Barrett, 494 U.S. 638 (1990). But here it is unsound, for the When Due Clause creates no personal rights and instead poses a question calling for exercise of the Secretary's discretion. To proceed otherwise is to warp the statutory scheme.

2. Employers' costs of underwriting

their portion of an unemployment-insurance system normally would be deductable from income as ordinary and necessary business expenses. The Federal Unemployment Tax Act makes unemployment insurance more attractive by extending tax credits for certain outlays if the state program to which the employer contributes meets federal criteria. One of these is that only an employee's fraud or misconduct may reduce "wage credits" or "benefit rights". 26 U.S.C. sec.3304(a)(10). Zambrano contends that the Cannery Rule "violates" sec.3304(a)(10). My colleagues hold that it does not. But I don't see how it is possible for a state program to "violate" a federal law giving tax credits if such-and-such occurs, and I therefore do not understand how this statute can be enforced (against the state, no less) via sec.1983. If Wisconsin's program does not satisfy sec.3304(a)(10), then employers must settle for deductions rather than credits, and the threat of paying more to the national government may induce employers to pressure the state to revise its rules. (What employers would ask the legislature to do depends on whether the additional expense to expand ex-workers' benefits would exceed the marginal value of tax credits compared with tax deductions.) But sec.3304(a)(10) does not impose any legal obligations on states, so there is no rule that can be enforced under the approach of Thiboutot. At least one could say, of Zambrano's claim under the When Due Clause, that Wisconsin must live up to the promises it made to get federal bucks; but so far as sec.3304(a) is concerned Wisconsin made no pledges and received no funds. How then could sec.3304(a)(10) invalidate Wisconsin's Cannery Rule?

Indeed, I do not see why there is a case or controversy between Zambrano and Wisconsin about sec.3304(a)(10). What skin is it off his nose whether his former employer gets a credit rather than a deduction? Allen v. Wright, 468 U.S. 737 (1984), holds that people lack standing to litigate about strangers' taxes. The problem is one of redressability: A judicial order increasing a third party's taxes may or may not lead to the relief the plaintiff seeks. If the court were to declare that employers in Wisconsin are limited to tax deductions, rather than tax credits, this

would not lead by any direct path to a change in the Cannery Rule, though it might set off a round of lobbying in the state legislature. Anyway, whatever bone Zambrano may have to pick with his former employer (for taking tax credits) or the Commissioner of Internal Revenue (for allowing those credits), he has not sued either of these entities. He has sued the Secretary of Wisconsin's Department of Workforce Development. If Zambrano is a bystander to any tax dispute between the employer and the Commissioner, the Secretary is a bystander once removed. See ASARCO Inc. v. Kadish, 490 U.S. 605, 615 (1989) (no standing if redressability depends on choices of third parties not before the court); Lujan v. Defenders of Wildlife, 504 U.S. 555, 568-71 (1992). But cf. Bryant v. Yellen, 447 U.S. 352 (1980).

   Having said this, I must acknowledge that yet again the Supreme Court has assumed otherwise. Wimberly v. Missouri Labor Relations Commission, 479 U.S. 511, 512 (1987), holds that "26 U.S.C. sec.3304(a)(12) does not prohibit a State from disqualifying unemployment compensation claimants who leave their jobs because of pregnancy, when the State imposes the same disqualification on all claimants who leave their jobs for a reason not causally connected to their work or their employer." The Justices assumed throughout the opinion that sec.3304(a) "allows" or "prohibits" certain provisions of state legislation. And as the opinion's caption reveals, the contestants were a worker and a state agency, rather than an employer and the tax collector. Wimberly does not suggest that there is anything unusual about this lineup, and the opinion does not mention standing or redressability. Thus it is easy to understand why Wisconsin did not protest Zambrano's invocation of sec.3304 and why my colleagues do not advert to the Article III problem--but it is real nonetheless. Jurisdictional questions lurking in the record, but unmentioned by a court, remain open to decision. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 119 & n.29 (1984); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37-38 & n.9 (1952); R.R. Donnelley & Sons Co. v. FTC, 931 F.2d 430, 433 (7th Cir. 1991). See also Webster v. Fall, 266 U.S. 507, 511 (1925). I do not think it a breach of

duty for an appellate court to emulate the Justices with respect to a jurisdictional issue, especially one that flies beneath the parties' radar. But it should be noticed next time.

3. Even the equal protection claim comes with a procedural millstone. The sole defendant is a state official, in her official capacity. Yet an official-capacity suit is one against the state itself, Kentucky v. Graham, 473 U.S. 159, 167 (1985), and sec.1983 does not authorize suits against states. See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997); Will v. Michigan Department of State Police, 491 U.S. 58 (1989). That disposes of Zambrano's claim for damages representing the benefits he sought. Footnote 10 to Will, 491 U.S. at 71 n.10, tells us that states are "persons" for purposes of prospective relief, though it is not clear what prospective relief Zambrano (who represents only himself and not a class) could be entitled to. Yet Wisconsin does not stand on the limited scope of sec.1983 and does not assert its immunity under the eleventh amendment. This is not the kind of jurisdictional problem that the court must notice even when the defendant is content to have the plaintiff's claim resolved in a federal tribunal. See Lapides v. University of Georgia, No. 01-298 (U.S. May 13, 2002) (overruling Ford Motor Co. v. Indiana Department of the Treasury, 323 U.S. 459 (1945)); Wisconsin Department of Corrections v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring).

FOOTNOTES

/1 In exceptional circumstances the federal government provides some money for benefits. When a state has very high unemployment and extended benefits are authorized, the federal government pays half. From 1995 through 1997 Wisconsin's residents received a total of $17,000 under this program. Second, when a state extends its benefit period beyond 26 weeks, the federal Treasury pays some of the costs. Wisconsin has not received a nickel under this program since 1987 (and its last substantial grant came in 1981). Finally, Congress authorizes ad hoc subsidies from time to time. In the main, however, the statement in the text dominates: The federal grant covers only states' administrative expenses.

/2 Wisconsin received more than $117 million in idea

funds in fiscal year 2001. It received only $56.8 million in unemployment-related funds. In 2001 Wisconsin distributed $791 million in regular unemployment benefits, so the federal reimbursement is less than 7% of total program costs.