CELEBRATION INTERNATIONAL, INC., Plaintiff,

v.

CHOSUN INTERNATIONAL, INC., Defendant.

No. IP 1:02–CV–1463–LJM/WTL.

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 12, 2002.

---

Thomas W. Blessing, Stewart & Irwin, P.C., Indianapolis, IN, for plaintiff.

Anthony H. Handal, Handal & Morofsky, LLC, Norwalk, CT, for defendant.

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

McKINNEY, Chief Judge.

This matter is before the Court on plaintiff's, Celebration International, Inc. ("Celebration"), Motion for a Preliminary Injunction against Chosun International, Inc. ("Chosun"). Celebration, who filed this copyright infringement action, claims that it will suffer irreparable harm unless Chosun is enjoined from selling certain tiger and giraffe costumes that allegedly infringe Celebration's copyrights.

The Court held a hearing to resolve this Motion for a Preliminary Injunction on November 19, 2002 (the "hearing"). With respect to the giraffe costumes, the Court denied the motion because Celebration failed to show a reasonable likelihood of success on the merits. More specifically, the Court concluded that there was no direct evidence of Chosun copying Celebration's costume, and that the costumes were not substantially similar. The Court took the tiger issue under advisement, and will now rule on whether Celebration carried its burden of establishing its entitlement to such an extraordinary remedy with respect to the tiger.

## I. BACKGROUND

### A. NOVEMBER 19, 2002, HEARING

#### 1. Design and Source of Celebration's Tiger

Edward Stanley ("Stanley"), the president of Celebration, started his Halloween products business in or around 1990 or 1991 in Indianapolis, Indiana. In either 1997 or 1998, Stanley entered into a licensing contract with the San Diego Zoo to make children's costumes based on the San Diego Zoo's animals. The Zoo re-

quested, among other animals, a tiger costume. Stanley sent a San Diego Zoo catalog, Def.'s Hrg. Ex. 4, to Ms. Lee ("Lee") in Thailand to begin developing a tiger costume. In or around June 1998, Stanley saw Lee's prototype for the tiger, and Stanley made a number of changes to it. Stanley made changes to the whiskers, the eyes, the ears, and the size of the head.

Although the tiger costume was inspired by the tiger in the San Diego Zoo picture, there are some differences between the Celebration tiger and the San Diego Zoo tiger. For example, in contrast to the gold and black on the upper nose area of the San Diego Zoo tiger, Celebration used a solid color for the upper nose area of its tiger. Stanley attributed this difference, and some others, to economics. Stanley testified that the printed material necessary to copy the San Diego Zoo tiger more faithfully was too expensive, and Celebration chose the less expensive materials.

Young Tak Song ("Song"), who owns factories in Thailand where plush animal costumes are manufactured, also played a role in the design of the Celebration tiger. Song, who has worked with Stanley for about five years, testified that he was instructed, presumably by Stanley, to make a design of a tiger based on the tiger from page 17 of the San Diego Zoo catalog, Def.'s Hrg. Ex. 4, but to make the tiger face "cute." Song admitted that the head, mane, and skin color of the Celebration tiger were commonly used by many manufacturers in the plush animal business.[1]

---

1. The parts of Song's testimony that involved visual comparisons of the costumes and their sources are of limited assistance to the Court. Song made the long trip to Indianapolis from Thailand for the hearing, but his reading glasses failed to make it to the court room. He testified that having his glasses would have been helpful. In any event, the Court

### 2. Celebration's Knowledge of Chosun's Tiger

Song testified that he first learned about the Chosun tiger in 2000 at an art fair in Nuremberg, Germany. Song informed Stanley at that time that Chosun had copied their design. Stanley testified that he actually heard about the allegedly infringing Chosun tiger in April 1999 from a customer. Stanley stated that he did not take any action against Chosun because he could never find Chosun's products on the market, and that he thought Chosun was based out of Korea. Stanley was unaware of Chosun's New York office, and did not notice Chosun's display when he was at the New York City Toy Fair in 1997. Stanley testified that he had never seen a Chosun product with a face of an animal on a hood until October 12, 2002.

### B. DECLARATIONS

### 1. Park Declaration

In opposition to the motion, Chosun presented two declarations. One was from Jay Park[2] ("Park"), the director of Chosun International, Inc. Park Dec. ¶ 1. According to Park, Chosun is a manufacturer of plush products sold throughout the United States, Canada, Europe, and Mexico. *Id.* ¶ 2. Chosun's sales office is on the ground floor of the Toy Building in New York City. *Id.* The Toy Building is also the location of the Toy Fair, which is held every year in February and well-known both domestically and internationally. *Id.* Chosun has many designers who make original designs for its plush products, in-

---

can and will make its own visual comparison of the tigers.

2. The Park Declaration submitted with the briefs was unsigned. However, an identical signed Park Declaration was admitted at the hearing without objection.

cluding teddy bears, plush animals, and plush animal costumes. *Id.* ¶ 3.

Chosun publishes a yearly catalog in which many of its products are illustrated. *Id.* ¶ 7. To fill the catalog, Chosun photographs many of its popular products and puts the photos in the catalog. *Id.* The catalog is then used as part of Chosun's marketing efforts. *Id.* Chosun also maintains photos of its products in a design library used for reference purposes. *Id.* ¶ 9.

Park's claim is that the tiger design was originated by Chosun in the early 1980s, long predating those of Celebration. *Id.* ¶ 11. Park maintains that its tiger costume product was based on a plush tiger stuffed animal that was in Chosun's catalogs as early as 1994. *Id.* ¶ 12. Chosun attached the front cover of its 1994 catalog, and a relevant catalog page from the same catalog to the Park Affidavit. Def.'s Br. Ex. A to Park Aff. Chosun also attached a pair of photographs from Chosun's 1996 design library. Def.'s Br. Ex. B to Park Aff. Park claims that the stuffed animals are the source of Chosun's tiger costume, and that the photos from the catalog and the design library prove this point because they are substantially identical. Park Dec. ¶ 12. According to Park, the following features are common to the 1994 and 1996 pictures of Chosun stuffed animals and the Chosun tiger costume: white ear fronts, black ear backs partially visible from the front, three right and three left "whisker spots," black stripes on an orange background, brown noses, inverted "Y" pattern dividing cheeks and lower jaw, white cheeks and lower jaw, white background patches behind amber eyes with black pupils, a tan upper snout extending between the eyes and nose, and long white sideburns. *Id.* ¶ 14.

Park also states that Chosun has received communications from its customers

indicating that they are reticent to order Chosun's costumes due to the instant suit. Park alleges that Celebration has made a "deliberate campaign" to inform customers (specifically Albertson's, Wal–Mart, and Kmart) of this suit to persuade those customers to buy from Celebration. *Id.* ¶ 22. Park maintains that Albertson's decided not to use Chosun as a supplier of Halloween goods in 2003 due to the present action, and that Wal–Mart has contacted Chosun and expressed concern over this suit. *Id.* ¶¶ 24–25. Finally, Park predicts that this action will severely affect its business because it will cast doubt on Chosun's reputation as a supplier of original goods. *Id.* ¶ 27.

### 2. *Oh Declaration*

Chosun also filed the declaration of K.A. Oh ("Oh"), the chief designer of Chiva Industries, Ltd. ("Chiva"), which is responsible for the design of many of Chosun's products. Oh Dec. ¶ 1. Oh asserts that she made the tiger and giraffe designs herself, and based them on plush animal toys that she had designed years before. *Id.* ¶ 4. She states that these designs, like all of the products she designs, were made without reference to Celebration's products, or other companies' products. *Id.* Oh begins her designs by making reference to photos of actual living animals, or to her older designs maintained in her reference collection. *Id.* ¶ 6. After making this initial design, Oh provides these materials to one of her designers to proceed with the design according to her instructions. *Id.* ¶ 7. Before being sold on the market, Chiva made costumes for internal use at company functions. *Id.* ¶ 8. In 1997, one of Chosun's executives asked Oh about possible new products, and she suggested the costumes they had used at internal company functions. *Id.* ¶ 9.

In 1997, Chiva produced a Santa Claus costume, and sample costumes for a dog

and a cat. *Id.* ¶ 10. The original costumes were based on coverall-type garments worn by house painters and auto mechanics. *Id.* ¶ 11. Oh also referred to children's clothing because she wanted the costumes to fit children. *Id.* The development of a hood on the costume was based on jogging suits, and an animal's head was added to it. *Id.* ¶ 12. That work led to the garment used in the children's costumes, and Oh based the tiger head on the costume on Chosun's wild animal plush toys product line. Br. Ex. A to Oh Dec., catalog no. 54870 in 1994 catalog, see also in color at Def.'s Hrg. Ex. 3. Oh designed the tiger plush toys herself, but does remember an earlier Chosun tiger product. Oh Dec. ¶ 15. The plush toys were based on photos of live animals, and on Oh's previous experience in design. *Id.* According to Oh, she began development of the design for the tiger plush costume in August 1998. *Id.* ¶ 16. Oh asserts that the tiger costume (and giraffe costume) at issue in the instant action are her original creations, and not copied from Celebration. *Id.* ¶ 18.

## II. *PRELIMINARY INJUNCTION STANDARD*

■ A preliminary injunction is an extraordinary remedy that will only issue on a clear showing of need. *See Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 1867, 138 L.Ed.2d 162 (1997) (per curiam) (" '[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.' ") (quoting 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2948 (2d ed.1995) (emphasis added) (footnotes omitted); *see also Eli Lilly & Co. v. Am. Cyanamid Co.,* 82 F.3d 1568, 1578 (Fed.Cir.1996). The movant bears the burden of proving its entitlement to

such relief. *See Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir.1999). Generally, in order to obtain an injunction, a plaintiff must show: 1) a reasonable likelihood of success on the merits; 2) irreparable harm; 3) the inadequacy of any remedy at law; 4) the balance of hardships tipped in its favor; and 5) the adverse impact on the public interest. *See id.* The first three factors are considered threshold questions that must be satisfied before balancing the interests of the parties or weighing the impact on the public interest. *See id.* "The court uses a 'sliding scale' approach to this balancing; that is, 'the more likely it is that [the movant] will succeed on the merits, the less balance of irreparable harms need weigh toward its side ...' " *Art Line, Inc. v. Universal Design Collections, Inc.* 966 F.Supp. 737, 740 (N.D.Ill. 1997) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992).

## III. *DISCUSSION*

### A. REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS

■■ For an injunction to issue, Celebration must show a reasonable likelihood of success on the merits of its copyright infringement claim. This is a low threshold. *See Art Line, Inc. v. Universal Design Collections, Inc.,* 966 F.Supp. 737, 740 (7th Cir.1997) ("It is enough that the plaintiff's chances are better than negligible ..."). To succeed on a copyright infringement claim, Celebration must demonstrate both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir.1994). Copyright law affords protection to the expression of the artist's con-

cept, not the underlying ideas. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985).

### 1. *Ownership of Valid Copyright*

■ A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright. 17 U.S.C. § 410(c). Celebration owns a copyright for a "San Diego Zoo Tiger," and photographic exhibits to the application display the tiger vest costume on a flat surface.[3] Pl.'s Hrg. Ex. A. The "3–Dimensional sculpture" box is checked in the certificate of registration for the Celebration tiger to describe the nature of the authorship. *See id.* Notwithstanding this *prima facie* evidence of a valid copyright, district courts have discretion to make an "independent determination in an infringement action as to whether a work is copyrightable, notwithstanding the position of the Copyright Office." *Whimsicality, Inc. v. Battat*, 27 F.Supp.2d 456, 462 (S.D.N.Y.1998). Moreover, Chosun challenged the validity of the Celebration's copyrights during the hearing by arguing that costumes are not copyrightable.

■ There is some dispute about whether costumes are protected by copyright at all. The Copyright Act (the "Act") protects pictorial, graphic, and sculptural works. 17 U.S.C. § 102(a)(5). This is why Celebration referred to its tiger costume as "sculpture" in its application to the Copyright Office. The Act defines useful articles as "an article having intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," 17 U.S.C. § 101, and "[c]opyright in the design of a useful article may be claimed 'only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" Melville B. Nimmer and David Nimmer, 1 *Nimmer On Copyright*, § 2.08[H][3] (quoting 17 U.S.C. § 101) (the "separability rule"). Costumes, like clothing garments, clearly have a utilitarian aspect because they cover the wearer's body and protect the wearer from the elements. Thus, because the language of 17 U.S.C. 101 only requires a work to have *an* intrinsic utilitarian function, this clothing function suffices to qualify the costumes as useful articles for purposes of the Act. *See* Paul Goldstein, 1 *Copyright*, § 2.5.3 at 2:62 (2002) [hereinafter *Goldstein* ].

Because the tiger costume is a useful article, it is only protected by copyright if it meets the separability test. Courts considering the issue of whether the sculptural features of a costume are independent and separable from the utilitarian aspects of a costume have reached conflicting conclusions. For example, the district judge in *National Theme Productions, Inc. v. Jerry B. Beck, Inc.* 696 F.Supp. 1348 (S.D.Cal.1988) held that highly original rabbit, tigress, dragon, and pup costumes were entitled to copyright protection as applied art because the costumes' artistic features were separable from their utilitarian purpose as clothing. *See id.* at 1353–54. On the other hand, another court concluded that a plaintiff's copyrights for numerous animal costumes were unenforcea-

---

**3.** Celebration actually has two tiger costumes; one is a full body costume, Pl.'s Hrg. Ex. C, and the other is a tiger vest costume, Pl.'s Hrg. Ex. B. Because the protected aspects of the tiger costumes are identical and because Celebration claims copyright protection for both of them from the same copyright, the Court will refer to them as the "tiger costume," or the "Celebration tiger."

ble because the utilitarian aspects of the costumes were not separable from the designer's expression. *See Whimsicality, Inc. v. Battat,* 27 F.Supp.2d 456 (S.D.N.Y. 1998), (citing to Judge Dearie's analysis in *Whimsicality, Inc. v. Rubie's,* 721 F.Supp. 1566 (E.D.N.Y.1989) and rejecting *National Theme*). *See also Funrise Canada (HK) Ltd. v. Zauder Bros., Inc.,* 1999 WL 1021810 (E.D.N.Y.).

There is also debate about whether the 17 U.S.C. 101 separability rule requires both physical and conceptual separability, or is satisfied by either type of separability.[4] *See Pivot Point Int'l, Inc. v. Charlene Prods., Inc., et al.,* 170 F.Supp.2d 828, 832 (N.D.Ill.2001) ("Treating physical separability as a requirement independent of conceptual separability also has the virtue of giving every phase of the statute some work to do."). *See also Goldstein,* § 2.5.3 at 2:64 (collecting cases on both sides of the issue). Courts and commentators have fashioned various tests to determine if the creative features of an object are separable from the utilitarian aspects. *See, e.g., Carol Barnhart, Inc. v. Econ. Cover Corp.,* 773 F.2d 411 (2d Cir.1985) (if the work at issue is wholly superfluous from any utilitarian purpose, it is copyrightable); *Kieselstein–Cord v. Accessories by Pearl, Inc.,* 632 F.2d 989 (2d Cir.1980) (considering a number of factors, including: (1) the intent of the artist; (2) the intent of the purchaser; and (3) the view of an objective third party); Robert C. Denicola, *Applied Art and Industrial Design: A Suggested Approach to Copyright in Useful Articles,* 67 MINN. L.REV. 707 (1983) (focusing on the creative process of the designer, rather than the completed prod-

uct). These numerous, sometimes conflicting, tests illustrate the difficulty of formulating and applying the separability test. *See Goldstein,* § 2.5.3 at 2:56 ("Of the many fine lines that run through the Copyright Act, none is more troublesome than the line between protectable pictorial, graphic, and sculptural works and unprotectable utilitarian elements of industrial design.").

The Court of Appeals for the Seventh Circuit has not yet endorsed any of the possible separability tests. However, Circuit Judge Easterbrook, sitting by designation on the United States District Court for the Northern District of Illinois, concluded that Professor Goldstein's approach to conceptual separability was the most convincing of the conceptual separability approaches. *See Pivot Point,* 170 F.Supp.2d at 833. Professor Goldstein's approach is as follows: "a pictorial, graphic, or sculptural feature incorporated in the design of a useful article is conceptually separable if it can stand on its own as a work of art traditionally conceived, and if the useful article in which it is embodied would be equally useful without it." *Goldstein,* § 2.5.3 at 2:67. Judge Easterbrook opined that the strength of Professor Goldstein's conceptual separability test "comes from the fact that it differs little, if at all, from the test of physical separability embraced by the D.C. Circuit in *Esquire* and by the majority in *Carol Barnhart.*" *Pivot Point,* 170 F.Supp.2d at 833.

### a. Physical Separability

■ *Carol Barnhart's* separability analysis and Judge Easterbrook's analysis in *Pivot Point* convince the Court that the

---

**4.** Because the Court ultimately concludes that the sculptural features of the tiger's head are both physically and conceptually separable from the utilitarian function of the costume, it need not address the issue of whether both types of separability are required by the Act. In any event, it does not appear that there is a great deal of difference between physical and conceptual separability. *See Pivot Point,* 170 F.Supp.2d at 833.

Celebration tiger's sculptural aspect (the head) is physically separable from the utilitarian function (the clothing garment) of the costume. In *Carol Barnhart*, the Second Circuit held that mannequins of human torsos are not copyrightable sculptural works because the mannequins failed the separability test of 17 U.S.C. § 101. *See Carol Barnhart*, 773 F.2d at 418–19. The *Carol Barnhart* court distinguished a prior Second Circuit case that held ornamental belt buckles to be separable, and consequently, copyrightable, in this way: "What distinguishes those buckles from the *Barnhart* forms is that the ornamented surfaces of the buckles were not in any respect required by their utilitarian functions; the artistic and aesthetic features could thus be conceived of as having been added to, or superimposed upon, an otherwise utilitarian article. The unique artistic design was wholly unnecessary to performance of the utilitarian function." *Id.* at 419. The Celebration tiger's head is physically separable in the same way the belt buckle was separable—it was in no way required by the clothing garment aspect of the costume. The costume is a full body clothing garment with a hood that had a tiger's head added to, or superimposed upon, the otherwise utilitarian garment. The tiger's head could easily be removed from the hood, and the remaining garment's utility would be unaltered.

Judge Easterbrook described the physical separability test as "whether the feature to be copyrighted could be sliced off for separate display," and gave examples of physically separable, copyrightable aspects from other cases: "a lamp without a dancer carved into its base still illuminates the room, and a sculpture of a Balinese dancer may be sold separately. Likewise a decorated belt may be sold as an *objet d'art* to someone who does not need it to hold up his pants." *Pivot Point*, 170 F.Supp.2d at 832 (referring to *Mazer v.*

*Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954) and *Kieselstein–Cord*, 632 F.2d at 989). Like the lamp without a Balinese dancer sculpture at its base still illuminating the room, the garment portion of the costume without the tiger's head would still keep the wearer warm. Moreover, the stuffed tiger's head could also be sold separately from the clothing garment. Accordingly, the Court concludes that the sculptural aspects of the tiger costume are physically separable from the utilitarian features.

### b. Conceptual Separability

■■■■ Professor Goldstein's conceptual separability test is very similar, if not the same as, the *Barnhart* physical separability test. *See Pivot Point*, 170 F.Supp.2d at 833. According to Goldstein, an article is conceptually separable if (1) the work of could stand alone as a work of art traditionally conceived; and (2) the useful article in which the art is embodied would be equally useful without it. *See Goldstein*, § 2.5.3 at 2:67. The tiger costume clearly satisfies the second part of the test—if the tiger's head were removed from the hood of the costume, the costume would still be equally useful to clothe the wearer. Whether the tiger's head could stand on its own as a work of art traditionally conceived is the more difficult question. The tiger's head is obviously not the type of art that would be accepted by a museum for its permanent collection, in contrast to some of the belt buckles at issue in *Kieselstein–Cord*. *See Barnhart*, 773 F.2d at 418. However, Professor Goldstein's notion that the sculptural aspect of a work must be able to stand "on its own as work of art traditionally conceived" is not so narrow that it is only met if the work would attract the attention of a museum. Professor Goldstein gave this example, among others, to illustrate his formulation of conceptual separability: "A novelty slip-

per made to look like a bear's paw would be conceptually separable because a slipper would be equally useful without the bear's paw configuration and because the bear's paw can stand alone as a—albeit modest—work of art." *Goldstein,* § 2.5.3 at 2:67. In the same way, Celebration's tiger costume would be equally useful without the tiger's head on the hood, and could stand alone as a—albeit modest—work of art. Thus, the utilitarian function and the sculptural aspect of Celebration's tiger costume are conceptually separable.

### Summary

Because it has the same utility as clothing, the Celebration tiger costume is a "useful article" as defined by the Act. Useful articles are only protected by the Act if the sculptural features of the work are separable from the utilitarian aspects of the article. The sculptural aspects of the Celebration tiger are both physically and conceptually separable from the utilitarian function of the costume. Therefore, the Celebration tiger is copyrightable.

### 2. *Scope of the Copyright Protection*

The fact that a work is copyrightable "says very little about the scope of its protection." *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616–17 (7th Cir.1982) (citation omitted), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Although some of the arguments during the hearing seemed to imply otherwise, Celebration does not have a copyright on tiger costumes generally. In fact, Celebration rightly admitted as much to the Court during its closing argument. The tiger costumes are essentially "tiger-skin" garments with a hood that has a tiger's head on top. The sculptural aspect of the costume is the head, which is protected to the extent that the head has particularized expression worthy of copyright protection.

The garment portion of the costume is clearly not copyrightable, as it is a "useful article" akin to clothing. *See, e.g., Whimsicality Inc. v. Rubie's Costume Co. Inc.,* 891 F.2d 452, 13 U.S.P.Q.2d 1296 (2d Cir. 1989) ("We have long held that clothes, as useful articles, are not copyrightable.") (citations omitted).

A Seventh Circuit case dealing with duffel bags with soft sculptured animal heads and tails assists the Court in clarifying this issue. *See Wildlife,* 18 F.3d 502; *see also Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.* 843 F.2d 600 (1st Cir. 1988) (analyzing similar issues in a case involving concrete lawn statues and ornaments, such as swans, donkeys, and deer). In *Wildlife,* the plaintiff manufactured and sold children's duffel bags with soft sculptured animal heads and tails on the ends of the bags. *See Wildlife,* 18 F.3d at 505. In that case, protection was not claimed for the idea of putting animal heads on duffel bags, but "for the animal heads and tails themselves, and for the way they are placed on the duffle bags." *Id.* at 507. The Seventh Circuit explained that as expressions become more particularized, the area of protection becomes greater.

When reproduction of a lifelike object is at issue, "a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not required by the idea." [quoting *Concrete Mach.* at 607]. One court has found that the design of a jewelled bee pin provided nothing new to the idea of the pin; therefore, since copying the pin necessarily would entail copying the idea as well as the expression, copying the expression was not barred. *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir.1971). However, "[a]s a work embodies more in the way of particularized expression, it moves away from the bee pin in *Kalpakian,*

and receives broader copyright protection." *Atari*, 672 F.2d at 617. At the other end of the spectrum, creative complex artistic expressions are more fully protected. *Id.; see Concrete Mach. Co.*, 843 F.2d at 607 (describing "sliding scale of copyright protection"); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1169 (9th Cir.1977) (finding that the expression of the television series differs markedly from the idea).

*Wildlife*, 18 F.3d at 508. The defendant in *Wildlife* argued that the bags had generic animal heads with little originality of expression, and consequently, only deserved narrow copyright protection. *See id.* at 510. The district court, and subsequently the Seventh Circuit, rejected that argument. *See id.* The Seventh Circuit stated: "Contrary to [defendant's] assertions, the animal portions of the duffle bags are neither generic designs nor lifelike representations deserving of only narrow protection. There is certainly an imaginative artistic expression in the soft sculptured heads and tails." *Id.* at 510–11. The Seventh Circuit concluded that some dissimilarities in the color and type of plush fur and the animals' eyes, noses, and ears did not preclude a finding of substantial similarity. *See id.* at 511. The animals were similar in size, shape, pose, and feel, and also had almost identical component pieces when disassembled. *See id.*

There is no doubt that Stanley's soft-sculptured tiger's head has some creative, imaginative expression. The more vexing question is how much creative expression is embodied in this tiger head because the amount of copyright protection granted is linked to the degree and complexity of expression. In the Court's view, a few factors weigh against granting Celebration extensive copyright protection for this tiger. The first is the source of the tiger. Stanley identified the San Diego Zoo catalog picture of a tiger as its source. Def.'s Hrg. Ex. 4. A lifelike expression of a tiger would receive limited copyright protection because inevitable similarities arise when comparing the characteristics of imitations of natural creatures.

A comparison of the Celebration tiger and the San Diego Zoo tiger does, however, reveal some differences between the two.[5] The color of the upper nose is a solid, off-white color on the Celebration tiger, and the San Diego Zoo tiger's upper nose is gold with some black mixed in between the eyes. The side of the face on the San Diego Zoo tiger is a mixture of white, black, and gold, while the corresponding portion of Celebration's tiger is gold with black stripes. Stanley explained away some of these differences in the hearing by saying that Celebration strayed from imitating more faithfully the live tiger's skin because it would be too expensive to make the Celebration head identical. This reasoning suggests that the Celebration tiger is supposed to look like a real tiger, and to the extent it does not, simple departures were permitted due to financial constraints, not because of creative expression.

Although the Celebration tiger is not entirely lifelike, the tiger's head has realistic features. Obviously, it is a small tiger's

---

**5.** Stanley made a sketch comparing Chosun's tiger costume to Celebration's tiger costume. Pl.'s Hrg. Ex. J. In the sketch, Stanley illustrated similarities between the lengths and sizes of different portions of the costumes. However, most of these similarities are irrelevant to the Court's analysis. An inference of copying does not arise from comparing aspects of the costumes that are unprotected— the only protected portions of the costumes are the sculptural features of the costume that are sufficiently expressive to justify copyright protection, and the sketch does not focus on these aspects.

head meant to fit over a young child's head, and not the size of a real adult tiger's head. However, it does not have the bright orange color that many stuffed animal tigers have, but the darker orange/ gold color (a tawny color) closer to the color of the San Diego Zoo tiger. Like a real tiger, it has whiskers, and it is not smiling. Moreover, in contrast to A.A. Milne's Tigger, or Bill Waterson's Hobbes from *Calvin & Hobbes,* the Celebration tiger is not humanized, and has no facial expression.

A second concern about the tiger that makes the Court hesitant to afford it extensive copyright protection is illustrated by a portion of Song's testimony at the hearing. During cross-examination, Song admitted that the head, mane, and skin color of the Celebration tiger were common or typical of those used by many manufacturers in the plush animal business. In the Court's view, this is because most tiger imitations will have many similar aspects simply because they are all representing the same animal (the similarities may also stem from the economic considerations that Stanley mentioned). This is especially true when the animal, as in this case, is based on the natural creature itself, and no major departures from the live animal are made. In short, there are only so many ways to make a lifelike tiger. Many, if not all, reproductions of a tiger will have orange and black plush fur, pointy ears, and black eyes. The Court considers it inappropriate to grant a company or designer broad intellectual property protection in these circumstances.

On the other hand, as Song testified, the tiger was also supposed to be, and is, "cute." What makes a tiger costume cute and welcoming to a child is difficult to put into words, but the Celebration tiger appears to be a something that would attract the attention of a child. Its soft, plush fur,

the lack of an imposing mouth and teeth, and the white side burns and nose combine to make it a "cute" tiger, and represent a departure from the tiger one would see in a zoo or in the wild.

On balance, the Court concludes that the tiger does have some particularized expression, and will recognize the copyright protection that this creative expression justifies. However, the expressiveness is limited due to the effort to reproduce a real, lifelike tiger. As such, the Celebration tiger will only be afforded limited copyright protection.

### 3. *Copying*

■■■■■ In this case, as in most copyright cases, there is no direct evidence of copying. However, copyright infringement may be inferred when it is shown that "the defendant had access to the copyrighted work, and the accused work is substantially similar to the copyrighted work." *Atari,* 672 F.2d at 614. Celebration cannot carry this burden of proof if "(1) the similarities between the works are not sufficient to prove copying, or (2) it is established that one work was arrived at independently without copying." *Wildlife,* 18 F.3d at 508.

■■■ The finding of whether or not items are substantially similar is made from the perspective of the "ordinary observer." *See Wildlife,* 18 F.3d at 508. The relevant question is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Atari,* 672 F.2d at 614 (citation omitted).

It is not disputed that Chosun had access to the Celebration tiger because the product was widely available to the public at stores like Kmart and Wal–Mart. *See*

*Wildlife,* 18 F.3d 502, 508 n. 5 ("Access can be found to exist when the defendant had an opportunity to view the protected item.") (citations omitted). Thus, it must be determined if Chosun's tiger is substantially similar to Celebration's expression of the tiger.

### a. Side–by–Side Comparison of the Celebration and Chosun Tigers

■ As in many Circuits, courts in the Seventh Circuit compare products side-by-side to determine if they are substantially similar. *See Wildlife,* 18 F.3d at 510–11. A side-by-side comparison of the Celebration and Chosun tigers, Pl.'s Hrg. Exs. C and D respectively, reveals the following differences (this is not an exhaustive list):

1. The fur on Celebration tiger is noticeably darker, more brownish, than the fur on the Chosun tiger.

2. The Celebration tiger has whiskers, while the Chosun tiger has three black spots on each side of its face where the whiskers would be.

3. The nose of the Celebration tiger is pink, and the nose of the Chosun tiger is brown.

4. The noses of the tigers are also different shapes.

5. The Celebration tiger's mane does not go under its chin, and relative to the Chosun tiger, the mane is not very hairy. Chosun's white mane is fuller and extends all the way under the tiger's chin.

6. The upper nose portion of the Celebration tiger is a lighter color, and extends all the way to the forehead of the tiger. On the other hand, Chosun's upper nose skin only extends to the height of the eyes.

7. The Celebration tiger does not have as much white fur around its eyes as the Chosun tiger does.

8. The Celebration tiger's mouth is hidden by the fur around it while the black mouth on the Chosun tiger is more noticeable.

9. The Celebration tiger's eyes are slightly smaller and have lighter irises than the Chosun tiger's eyes.

However, these dissimilarities do not preclude a finding of substantial similarity. *See Wildlife,* 18 F.3d at 511 (concluding that dissimilarities in the color and type of plush fur and the animals' eyes, noses, and ears did not preclude a finding of substantial similarity). A quick glance from an ordinary observer reveals that the tiger faces are very similar; the size, shape, and feel of the heads are nearly identical. As Judge Learned Hand held, two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2nd.Cir.1960). An observer only detects the differences between the tigers upon careful comparison, and a shopper in the aisles of Wal–Mart or Kmart could easily overlook them. Despite the differences between the tigers, and despite the limited expressiveness of the tiger and corresponding narrow copyright protection that accompanies that expression, the Court concludes that the similarities between the tigers show that Chosun has a "better than negligible" chance of showing substantial similarity. *See Art Line, Inc.,* 966 F.Supp. at 740 ("It is enough that the plaintiff's chances are better than negligible [to show reasonable likelihood of success on the merits] . . .").

### b. Independent Creation

■ Even if the tigers are substantially similar, Chosun can show that it did not copy the tiger by establishing that the Chosun tiger was arrived at independently

without copying. *See Wildlife*, 18 F.3d at 508. Chosun argued in its Memo in Opposition and also at the hearing that the Park and Oh declarations, and their attached catalogs, prove that the source of the Chosun tiger was a stuffed animal tiger that Chosun came up with long before Stanley designed the Celebration tiger.

Park, the director of Chosun International, stated that the Chosun tiger costume was derived from a plush tiger stuffed animal, and the stuffed animal tiger was designed in the early 1980s. Park Dec. ¶¶ 11–12. The tiger stuffed animal was in Chosun's catalog as early as 1994. *Id.* ¶ 12. Chosun attached the relevant page, and front cover of its 1994 catalog to Park's Declaration. Def.'s Br. Ex. A to Park Aff. (the actual catalog was admitted at the hearing, Def.'s Hrg. Ex. 3). Oh, the designer of both the original stuffed animal tiger and subsequent tiger costume, asserts that she made the head of the tiger for the costume from Chosun's wild animal plush toy product line. Br. Ex. A to Oh Dec, catalog no. 54870 in 1994 catalog, Def.'s Hrg. Ex. 3.

According to Park, a comparison of the 1994 wild animal plush toy to the head of the Chosun tiger costume reveals the following common features: white front ears, black ear backs partially visible from the front, three right and three left "whisker spots," black stripes on an orange background, brown noses, inverted "Y" pattern dividing cheeks and lower jaw, white cheeks and lower jaw, white background patches behind amber eyes with black pupils, a tan upper snout extending between the eyes and nose, and long white sideburns. Although Stanley claimed he saw differences between the two and complained about not having the actual stuffed animal tiger rather than a picture (a con-

cern the Court shares), the head of the Chosun tiger costume and the head of the stuffed tiger Park and Oh claim as its source [6] appear to be identical. Moreover, many of the differences cited earlier between the Celebration and Chosun tigers are explained by looking at the stuffed tiger picture. The stuffed tiger has the full, white mane that extends under its chin, the lighter tiger skin, the white "eye patch" around its eyes that the Chosun tiger costume has, and the Celebration tiger lacks. This explanation of the differences between the Chosun and Celebration tigers suggests that many of the similarities simply stem from the fact that both companies are reproducing a tiger. It seems clear that the Chosun tiger was derived from the stuffed animal pictured in Chosun's 1994 catalog. During the hearing, Stanley testified that he and Lee designed the Celebration tiger around June 1998. Accordingly, Chosun has established an earlier, independent creation and rebutted Celebration's showing of substantial similarity. Thus, the Court concludes that Celebration has not carried its burden to show a reasonable likelihood of success on the merits of its copyright infringement claim.

## B. IRREPARABLE HARM, INADEQUATE LEGAL REMEDY, BALANCE OF HARDSHIPS

■ Because the Court concludes that Celebration has failed to carry its burden with respect to a threshold issue, the Court need not consider the other preliminary injunction factors. *See, e.g., Boucher v. School Bd. of School Dist. of Greenfield,* 134 F.3d 821, 823–24 (7th Cir.1998). However, even if Celebration had, in fact, carried its burden of showing likelihood of

---

6. Specifically, the Court refers to the stuffed tiger in the right corner of the "Wild Cats" (no. 54870) picture box on page 17 of the 1994 catalog.

success on the merits, it has not carried its burden with respect to a showing of irreparable harm, another threshold factor.

In both the hearing and briefs, both parties focused their attention on the likelihood of success factor more than the other factors. . However, Chosun did argue during the hearing that Celebration's delay in filing this suit and the accompanying preliminary injunction motion suggests that Celebration will not suffer irreparable harm while awaiting a decision on the merits. Song testified that he told Stanley about the alleged infringement around the time of the Nuremberg toy fair in 2000. Stanley testified that he actually knew about Chosun's tiger earlier than that—a customer informed him of the alleged infringement in April 1999. When asked why he did not act during that time, Stanley's only response was that he could not find Chosun's tiger anywhere, and did not know that Chosun had New York offices. Celebration did not file the instant suit until September 23, 2002, three years and five months after learning about the alleged infringement from a customer. It strains credulity to believe that a shrewd and successful international businessman like Stanley would not have acted faster if Chosun's tiger would have significantly harmed his business.

 Some courts would hold that this delay alone, regardless of whether a plaintiff is likely to succeed on the merits, would justify denial of a preliminary injunction. *See, e.g, Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2nd Cir.1985) (lack of due diligence in pursing injunction may, standing alone, preclude the grant of injunctive relief); *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.* 335 F.Supp. 278, 280 (S.D.N.Y.1971) (seven month delay) ("by sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues . . .") (citation omitted). In the Seventh Circuit, some delay between the time a plaintiff knows about or should know about alleged infringement and the time the plaintiff moves for injunctive relief is a relevant, though not dispositive, factor when a plaintiff claims irreparable harm will accrue between the time of filing a lawsuit and a court's decision on the merits. *See Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir.1979). The tardiness weighs against a plaintiff's claim of irreparable harm, especially when the delay is not excused for a good reason or when the defendant has relied on the inaction. *See id.; see also Ty., Inc. v. Publications Intern., Ltd.*, 81 F.Supp.2d 899, (N.D.Ill.2000) (ongoing settlement discussions a good reason for delay). Although Chosun has not offered evidence of potential reliance damages, Celebration has not proffered any good excuse for the three year delay, which is a long delay compared to delays excused in other cases. *See, e.g., Ty Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (eight month delay not unreasonable); *In re: Aimster Copyright Litigation*, 2002 WL 31006142, *24 (N.D.Ill.2002) (sixteen or seventeen month delay appears less objectionable when assessed in light of parties' situation and affect on defendant). No evidence was presented that Celebration asked Chosun to cease selling its tiger costumes, or that Celebration tried to settle this dispute during that period. In fact, it appears that Celebration did not do anything at all about the alleged infringement between April 1999 and this November 2002 suit. After allowing the alleged infringement to go on unchecked for three and a half years, it seems incongruous to now argue that the extraordinary remedy of a preliminary injunction is necessary to prevent irreparable harm. Thus, even if

Celebration had carried its burden with respect to likelihood of success on the merits, it has not carried its burden of demonstrating irreparable harm.

### Summary

Although Celebration carried its modest burden of showing more than a negligible chance of demonstrating substantial similarity, Chosun has overcome that showing by adducing evidence of an independent creation of its tiger. Thus, Celebration has failed to establish a reasonable likelihood of success on the merits. Even if Celebration had enough evidence to carry its burden on the likelihood of success element, it has not carried its burden with respect to irreparable harm. Reasonable likelihood of success on the merits and a showing of irreparable harm are both threshold questions that must be established by the movant to justify this extraordinary and drastic remedy. Accordingly, the Court **DENIES** Celebration's Motion for a Preliminary Injunction.

### IV. *CONCLUSION*

For the reasons discussed herein, the Court finds that Celebration has failed to carry its burden of proving entitlement to a preliminary injunction. Thus, the Court **DENIES** Celebration's Motion for a Preliminary Injunction.